**John Davison ROGERS, Appellant,**

v.

**CIGNA INSURANCE COMPANY OF TEXAS, Appellee.**

**No. 01–93–00549–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

July 21, 1994.

Gary A. Scarzafava, Kathleen Walsh Beirne, Annelie Menke, Houston, for appellee.

Before HUTSON–DUNN, COHEN and O'CONNOR, JJ.

## OPINION

HUTSON–DUNN, Justice.

John Davison Rogers brought a bad faith action against CIGNA Insurance Company of Texas, and now appeals the directed verdict granted to CIGNA. We affirm.

### Disposition of Outstanding Motions

Several months before oral argument, the parties filed motions concerning the content of the record. We ordered the motions to be "taken with the appeal," i.e., to be ruled on at the time we hear the appeal itself. Because the resolution of these motions will determine the content of the record we will review in deciding this appeal, we consider the motions first.

### 1. Fact Summary

The statement of facts reflects that Rogers called two witnesses, Belinda Johnson and John Collins, by videotape deposition. The written transcriptions of these witnesses' depositions were available to, and used by, counsel for both parties and the judge. Before the playing of each video, CIGNA's attorney used the written transcriptions to make objections, and Rogers' attorney used them to respond. In the process, both attorneys referred to specific pages and lines of the transcriptions. The judge sustained some of CIGNA's counsel's objections, and ordered that some portions of the videotapes not be played to ·the jury.

Rogers then played the portions of the videotapes that he wanted the jury to see, minus the parts ordered left out by the judge. The statement of facts indicates that the court reporter left the courtroom during the playing of the videotapes. Rogers' counsel did not object to the reporter's absence during the showing of the videos.

At the end of the video presentations, the court reporter returned to the courtroom.

William T. Powell, Houston, Robert G. Clark, Abilene, for appellant.

CIGNA's counsel, under the rule of optional completeness, then offered portions of the depositions that Rogers did not present in playing the videotapes. CIGNA's counsel, however, did not offer the omitted portions by videotape; rather, he read the omitted testimony from the written transcriptions of the witnesses' testimony. The court reporter transcribed CIGNA's counsel's reading of the testimony.

Neither the videotapes nor the written transcriptions of the depositions were originally included in our record.

## 2. The Motions

### A. Rogers' Motion to Supplement the Statement of Facts

As the appellant, it was Rogers' burden to make sure that the deposition testimony of Johnson and Collins was transcribed and presented to us for our review. TEX.R.APP.P. 50(d); *4M Linen & Uniform Supply Co. v. W.P. Ballard & Co.*, 793 S.W.2d 320, 323 (Tex.App.—Houston [1st Dist.] 1990, writ denied) (holding that, under rule 50(d), it is the complaining party that "must provide the record that shows error."). In this motion, Rogers asks us to supplement the statement of facts with the written transcriptions of Johnson's and Collins' testimony made at the time they gave their depositions.

Texas Rule of Appellate Procedure 55(b), entitled "Amendment of the Record—Before Submission," states in relevant part:

> If anything material is omitted from the ... statement of facts, before submission ... the appellate court, on a proper suggestion or on its own initiative, may direct a supplemental record to be certified and transmitted by the clerk of the trial court or the official court reporter supplying such omitted matter. The appellate court shall permit it to be filed unless the supplementation will unreasonably delay disposition of the appeal.

TEX.R.APP.P. 55(b). Relying on this rule, the San Antonio Court of Appeals allowed supplementation under similar circumstances in *Southern Pac. Transp. Co. v. Hernandez*, 804 S.W.2d 557 (Tex.App.—San Antonio 1991,

writ denied), *cert. denied,* —— U.S. ——, 112 S.Ct. 406, 116 L.Ed.2d 355 (1991). In *Hernandez,* counsel read the deposition testimony of a witness to the jury. 804 S.W.2d at 560. The court reporter did not transcribe the reading of the deposition testimony into the statement of facts. *Id.* Upon discovering the omission of the witness' testimony in the statement of facts, counsel filed a motion to amend the record, seeking to add the written transcription made at the time of the deposition to the statement of facts. *Id.* The court granted the motion, making the transcription "part of the formal record before this court." *Id.*

■ The videotape depositions of Belinda Johnson and John Collins were viewed by the jury, but written transcriptions of the video testimony were not made at trial. Written transcriptions of the same testimony do exist, however, because written transcriptions were made at the time the video depositions were given in the discovery phase of the lawsuit. We hold that, under these circumstances, the testimony of Belinda Johnson and John Collins was "omitted" from the statement of facts under rule 55(b).

■ CIGNA argues that to allow supplementation would amount to "creating" part of the record, as opposed to "correcting" the record. *See Gerdes v. Marion State Bank,* 774 S.W.2d 63, 65 (Tex.App.—San Antonio 1989, writ denied) ("Rule 55 authorizes trial judges and appellate courts to correct the appellate record on their own initiative, or at the request of counsel; it does not allow the creation of a new trial court record."). We disagree. Where (1) deposition testimony is presented to the jury, (2) the deposition testimony is not transcribed into the record by the court reporter, and (3) a proper written transcription of the same testimony was made at the time the deposition was given, supplementation of the record with the transcription made at the time the deposition was given is *correcting* the record, not creating it. *Hernandez,* 804 S.W.2d at 560. What we are adding to the record is merely a transcription of testimony that the jury, it is undisputed, heard at trial.[1] Under these circumstances,

---

1. Rogers himself expresses concern that supplementation with the deposition copies, while put-

using deposition transcriptions to cure an omission in the statement of facts amounts to no more than correcting the statement of facts.

Rogers has attached to his motion copies of the written transcriptions of the depositions of Belinda Johnson and John Collins. The filing of these transcriptions will not unreasonably delay the disposition of this appeal. We grant this motion and order the transcriptions filed as part of the record in this cause.

### B. Rogers' Motion (and Supplemental Motion) to Reverse and Remand for a New Trial

Texas Rule of Appellate Procedure 50(e) states that an appellant is entitled to a new trial if (1) the appellant has made a timely request for a statement of facts, (2) the court reporter's notes and records "have been lost or destroyed," and (3) the parties do not agree on a statement of facts. Rogers made a timely request for a statement of facts, and the parties have stated that they will not agree on a statement of facts. Rogers, however, cannot meet the second part of the test—the court reporter's notes are not "lost or destroyed." This requirement contemplates that notes were actually made, then either lost or destroyed after coming into existence. *See Hidalgo, Chambers & Co. v. Federal Deposit Ins. Corp.*, 790 S.W.2d 700, 701 (Tex.App.—Waco 1990, writ denied) (records made, then lost); *Vickers v. Sunrise Lumber Co.*, 759 S.W.2d 747, 748 (Tex.App.— El Paso 1988, writ denied) (stenographic notes made, then inadvertently thrown away); *Hoyt v. INA of Texas*, 752 S.W.2d 628, 629 (Tex.App.—Waco 1988, writ denied) (stenographic notes made, then lost).

Here, the court reporter did not make any notes when the videotapes were played to the jury; thus, there were no notes to lose or destroy. Rogers argues, however, that he is entitled to a new trial because the court reporter did not fulfill his duty under Tex.

R.App.P. 11(a)(1) to record the video deposition testimony. We disagree. Although an appellant is entitled to a complete statement of facts, where a witness testifies in the absence of the court reporter and the appellant fails to object, the appellant is not entitled to a new trial. *Robinson v. Robinson*, 487 S.W.2d 713, 714 (Tex.1972); *see Weaver v. Westchester Fire Ins. Co.*, 739 S.W.2d 23, 24 (Tex.1987) (party preserved appellate complaint of absence of court reporter by objecting to absence of court reporter during the proceeding).

Furthermore, rule 11(a)(1) states that an official court reporter shall "mak[e] a full record of the evidence *when requested* by the judge or any party to the case...." (Emphasis added.) In a criminal case, we held that, under rule 11(a)(1), "the requirement of a court reporter must be asserted." *Osborne v. State*, 845 S.W.2d 319, 322 (Tex.App.— Houston [1st Dist.] 1992, pet. ref'd). While this does not mean that counsel has a burden to ask for a court reporter each time a new witness takes the stand even if the court reporter never leaves his position, counsel cannot keep silent when the court reporter openly leaves the courtroom and thereby guarantee his client a new trial.

Rogers is not entitled to a new trial. We deny this motion.

### C. Other Motions

In view of our disposition of Rogers' motion to supplement, we deny as moot Rogers' "Objection to the Statement of Facts," in which he asks us to "rule that the statement of facts is incomplete through no fault of the appellant and that it is not possible to obtain a complete statement of facts." We likewise deny CIGNA's motion to strike Rogers' motions and the deposition copies.

### The Merits of the Appeal

### 1. Fact Summary

Rogers was injured when the car he was driving, which had been provided by his em-

ting all of Belinda Johnson's and John Collins' testimony in our record, would not reveal any objections to the testimony made by CIGNA's counsel, and the judge's rulings thereon. The statement of facts, however, includes the objec-

tions and the rulings thereon, both of which were made before the videos were played. We are therefore able to discern what portions of the depositions the trial court did not allow the jury to see.

ployer, was struck by a train. CIGNA, the workers' compensation insurer for Rogers' employer, began paying indemnity and medical benefits for total incapacity after the accident. Approximately three months after the accident, Rogers returned to work. CIGNA stopped paying indemnity benefits approximately six months after the accident. After CIGNA stopped paying indemnity benefits, Rogers filed a workers' compensation claim with the Industrial Accident Board, claiming he was entitled to indemnity benefits for total and permanent incapacity.

The Industrial Accident Board entered an award for partial incapacity. CIGNA filed suit to set aside the Board's award, and the parties were realigned, making Rogers the plaintiff and CIGNA the defendant. The case proceeded to trial, and the jury entered a verdict of total and permanent incapacity. While the case was on appeal, the parties settled.

Rogers then filed this action, alleging that CIGNA "had no reasonable basis for denying" his claim for indemnity benefits for total incapacity, and was therefore in "bad faith in the handling" of the claim. The case went to trial on Rogers' second amended petition, in which Rogers stated claims for medical benefits, indemnity benefits, and denial of proper medical care and treatment.

At trial, Rogers non-suited his claim for denial of proper medical care and treatment. After Rogers rested, CIGNA moved for a directed verdict, citing seven grounds. The trial court granted CIGNA's motion without specifying on which ground or grounds it had relied.

### 2. Was there a Reasonable Basis for CIGNA to Dispute Rogers' Claim?

■ When a trial court grants a motion for directed verdict without stating the specific ground or grounds on which it is relying, the verdict must be upheld if any of the grounds stated in the motion are meritorious. *McCarley v. Hopkins,* 687 S.W.2d 510, 512 (Tex.App.—Houston [1st Dist.] 1985, no writ). One of the grounds on which CIGNA moved for directed verdict is that there was undisputed evidence (set out later in the opinion) that showed CIGNA had a reasonable basis to dispute Rogers' claim.

■ Rogers attacks this ground in his second point of error, in which he asserts that "there was a great deal of evidence supporting the premise that CIGNA had no reasonable basis to deny or delay Rogers' claim." Rogers urges us, under the traditional standard of review for directed verdicts, to disregard the evidence that showed CIGNA had a reasonable basis to dispute Rogers' claim, and to consider only the evidence that CIGNA did not have a reasonable basis to dispute the claim. *See Wright v. General Motors Corp.,* 717 S.W.2d 153, 155 (Tex.App.—Houston [1st Dist.] 1986, no writ) (stating traditional standard of review for directed verdicts). Ordinarily, in reviewing a directed verdict that was granted based on the evidence, we would only consider any evidence favorable to the plaintiff in order to determine whether the evidence raised an issue of fact that should have gone to the jury. *See id.*

■ CIGNA argues, however, that we should not employ the traditional standard of review, but rather determine whether there was evidence before CIGNA that gave it a reasonable basis to deny Rogers' claim, and, if so, affirm. We agree with CIGNA.

In *State Farm Lloyds, Inc. v. Polasek,* 847 S.W.2d 279 (Tex.App.—San Antonio 1992, writ denied), an insurance company denied its insured's fire loss claim on the ground that the fire was caused by arson. *Id.* at 281. The insured filed suit, and the jury found that the insured did not commit arson and that the insurer "acted in bad faith because it did not have a reasonable basis for denying the claim." *Id.*

The parties differed on which standard of review the court of appeals should employ; the insured argued that the court "must disregard all the evidence supporting [the insurer's] decision to deny the claim." *Id.* at 285. The court disagreed:

> That is a correct statement of the general no-evidence rule but a complete misstatement of the substantive proof required for the bad faith cause of action. And it fails to reckon with the undisputed evidence

cases. In a bad-faith action, the issue is whether there was evidence in existence before [the insurer]; the issue is not whether [the insurer] correctly evaluated the evidence before it. Therefore under the no-evidence standard of review we do not disregard the evidence that was indisputably before [the insurer] when it denied the claim. Courts and juries do not weigh the conflicting evidence that was before the insurer; they decide *whether evidence existed* to justify denial of the claim.

At bottom, the issue is whether the plaintiff must show that there was no reasonable basis for denying the claim, or simply produce some evidence of unreasonableness. We think the former approach ... is consistent with the supreme court's statement of the cause of action,[2] which requires the plaintiff to refute the existence of any reasonable basis for denying the claim.

*Id.*

◼ We do not, therefore, utilize the traditional standard of review; instead, we determine whether there was evidence before CIGNA that gave it a reasonable basis to deny Rogers' claim. *See Polasek,* 847 S.W.2d at 285. If there was such evidence, CIGNA was entitled to judgment as a matter of law:

[I]t is not enough for the insured to show that the insurer should have known to pay the claim, or that there were other facts suggesting the claim was valid. The insured must show that *no reasonable basis existed* for denying the claim. This means that the insured must prove that there were no facts before the insurer which, if believed, would justify denial of the claim. In essence, the insured must prove a negative because one element of the cause of action is "the absence of a reasonable basis." ... In other words, *if a reasonable basis exists for questioning the insurance claim, the insurer may deny it and litigate the matter without also facing a bad faith claim.*

*Id.* at 284–85 (citations omitted). As our supreme court has held, if the insurer in a bad faith action shows that it had a reasonable basis to deny or delay payment of the claim, even if that basis is eventually determined by a fact finder to be erroneous, *the insurer is entitled to judgment as a matter of law. Lyons v. Millers Casualty Ins. Co.,* 866 S.W.2d 597, 600 (Tex.1993). If the insurer shows a reasonable basis, it cannot be liable for the tort of bad faith. *Id.; see Dominguez,* 873 S.W.2d at 376.

We note that other courts have utilized the same approach to evidentiary points in bad faith cases. *See St. Paul Lloyd's Ins. Co. v. Fong Chung Huang,* 808 S.W.2d 524 (Tex. App.—Houston [14th Dist.] 1991, writ denied) (where record established that insurer had reasonable basis to deny claim, court reversed bad faith judgment for insured and rendered judgment for insurer); *St. Paul Guardian Ins. Co. v. Luker,* 801 S.W.2d 614 (Tex.App.—Texarkana 1990, no writ) (same); *Millers Casualty Ins. Co. v. Lyons,* 798 S.W.2d 339 (Tex.App.—Eastland 1990), *aff'd,* 866 S.W.2d 597 (Tex.1993) (same); *National Union Fire Ins. Co. v. Hudson Energy Co.,* 780 S.W.2d 417 (Tex.App.—Texarkana 1989), *aff'd,* 811 S.W.2d 552 (Tex.1991) (where record showed "just cause" for insurer to deny claim, award of exemplary damages for bad faith deleted from judgment for insured); *Fuentes v. Texas Employers' Ins. Ass'n,* 757 S.W.2d 31 (Tex.App.—San Antonio 1988, no writ) (where insurer showed reasonable basis for denying claim, summary judgment for insurer affirmed). In *Polasek,* evidence showed that the insurer had a reasonable basis for denying the insured's claim; thus, the court reversed the insured's judgment in the bad faith case and rendered judgment that he take nothing. 847 S.W.2d at 288. These results are consistent with the supreme court's pronouncements that if the insurer shows a reasonable basis for the denial or delay of the plaintiff's claim, the insurer cannot be liable for bad faith. *See*

---

**2.** *See National Union Fire Ins. Co. v. Dominguez,* 873 S.W.2d 373, 376 (Tex.1994); *Aranda v. Insurance Co. of N. Am.,* 748 S.W.2d 210, 213 (Tex.1988) (both opinions stating that, to establish liability for an insurer's bad faith, an insured must prove (1) the absence of a reasonable basis for denying or delaying payment of the policy benefits, *and* (2) that the insurer knew or should have known that there was no reasonable basis for denying or delaying payment of the claim).

*Lyons,* 866 S.W.2d at 600; *see also Aranda,* 748 S.W.2d at 213.

There was undisputed evidence in this case that CIGNA had a reasonable basis for disputing Rogers' claims for indemnity benefits. Regarding CIGNA's cessation of payments for total incapacity, we note that, under the workers' compensation law governing Rogers' claim,[3] a person is not totally incapacitated unless he can no longer secure and hold the type of employment at which he was making a living prior to his injury. *Trinity Universal Ins. Co. v. Rose,* 217 S.W.2d 425, 426 (Tex.Civ.App.—Texarkana 1949, writ ref'd n.r.e.); *Traders & Gen. Ins. Co. v. Collins,* 179 S.W.2d 525, 529 (Tex.Civ.App.—Galveston 1944, writ ref'd w.o.m.).

CIGNA had before it the reports of four physicians indicating that Rogers was not totally incapacitated. The first of the four doctors, Rogers' treating physician, released Rogers to return to work on full-time status three months after the accident. Nevertheless, CIGNA did not stop paying Rogers indemnity benefits for total incapacity until three months after Rogers returned to work full time. The second physician reported, two and a half months after the accident, that there was no reason that Rogers could not return to work. The third and fourth physicians both reported that there were no indications that Rogers could not perform his job.

■■■ Considering these reports, CIGNA had a reasonable basis to dispute Rogers' claim for indemnity benefits for total incapacity. Four physicians concluded that Rogers could return to the same work he had been doing before the accident. A medical opinion that discredits a claim is a reasonable basis for denying payment of the claim. *Polasek,* 847 S.W.2d at 286 ("While such a claimant might prevail on the merits in his compensation case, as a matter of law the medical

opinion constituted a reasonable basis for denying the claim, which precluded the bad faith cause of action."); *Fuentes,* 757 S.W.2d at 33, 34; *see Dominguez,* 873 S.W.2d at 377 (reversing bad faith judgment for plaintiff and rendering judgment for insurer, noting that the plaintiff "presented no evidence that casts doubt on [the insurer's] reliance on the medical professionals who diagnosed the [plaintiff's] condition as a degenerative disease," as opposed to a work related problem). One of Rogers' own expert witnesses testified that, considering the reports, he "d[id] not have any problem" with the fact that CIGNA stopped paying benefits to Rogers after he returned to work; he testified that the cessation was "proper."

■■■ CIGNA had a reasonable basis to conclude that Rogers, whom four physicians had cleared to return to his same job, was not totally incapacitated, and thus not entitled to payments for total incapacity.[4]

■■■ Regarding payments for partial incapacity, we note that an injured employee may recover partial incapacity payments only if the employee has suffered a reduction in earning capacity. *Employers Reinsurance Corp. v. Holland,* 347 S.W.2d 605, 606 (Tex. 1961); *American Mut. Liab. Ins. Co. v. Wedgeworth,* 140 S.W.2d 213, 217 (Tex.Civ. App.—Galveston 1940, writ dism'd judgm't cor.). The fact that an injured employee resumes work in the same job at the same amount of compensation that he accrued before the injury is some evidence that there has been no loss of earning capacity. *Maryland Casualty Co. v. Goetz,* 337 S.W.2d 749, 752 (Tex.Civ.App.—Amarillo 1960, no writ); *Travelers Ins. Co. v. Truitt,* 280 F.2d 784, 787 (5th Cir.1960) (construing article 8306).

■■■ Rogers returned to work in the same job that he held before the accident, at the same amount of money. Shortly after he

---

**3.** Because Rogers' accident occurred in 1987, before the repeal of Texas workers' compensation law, his claim is subject to the old workers' compensation law, Tex.Rev.Civ.Stat.Ann. art. 8306 *et seq.* (Vernon 1967).

**4.** While the fact finder in Rogers' workers' compensation trial evidently disagreed with the physicians, since it entered a verdict of total and

permanent incapacity, this is irrelevant for purposes of the bad faith action. The issue in a bad faith case is not whether the fact finder in the underlying case believed the evidence that the insurer relied on to dispute the claim; rather, the issue is whether such evidence *existed. Polasek,* 847 S.W.2d at 286; *see Lyons,* 866 S.W.2d at 601.

returned to work, his wages increased. He testified at trial that his earnings had increased every year since his accident. These facts, which constituted some evidence that Rogers did not lose earning capacity, gave CIGNA a reasonable basis to dispute Rogers' claim for payments for partial incapacity.

Furthermore, two of Rogers' expert witnesses testified that Rogers was not due any benefits for partial incapacity, because a calculation of partial incapacity benefits under the applicable article, TEX.REV.CIV.STAT.ANN. art. 8306, § 11 (Vernon 1994), showed an entitlement to zero benefits. Section 11, the section of article 8306 that addresses partial incapacity, calls for "compensation equal to sixty-six and two-thirds per cent (66⅔%) of the difference between his average weekly wages before the injury and his average weekly wage earning capacity during the existence of such partial incapacity[.]" The evidence showed that Rogers' "average weekly wage earning capacity" actually *rose* after the accident, not that it fell. "[P]artial incapacity cannot exist unless the average weekly wage earning capacity after injury is less than average weekly wages before injury." *Holland,* 347 S.W.2d at 606.

CIGNA had a reasonable basis to dispute Rogers' claim for payments for partial incapacity.

Regarding CIGNA's alleged cessation of medical benefits, three of Rogers' witnesses, including Rogers, testified that CIGNA never stopped paying medical benefits. Rogers' attorney attempted to put on evidence of unpaid medical bills; the court, however, sustained CIGNA's counsel's objections to the evidence.[5] Later, Rogers specifically testified that CIGNA never stopped paying his medical bills.

Rogers points to the testimony of Les Seabolt, one of his witnesses, to show us evidence that CIGNA had no reasonable basis for its handling of Rogers' claim. Seabolt testified that it was "unreasonable" for CIGNA to appeal the Board's award. He stated that there was no reasonable basis for CIGNA not to pay Rogers' claim, but instead to

"mak[e] [him] go try his lawsuit to a jury" in order to recover the benefits he sought.

■ Under the applicable standard of review, Seabolt's testimony does not mandate a reversal of the directed verdict. As the cases quoted above demonstrate, testimony indicating that the insurer had no reasonable basis for its handling of a claim does not compel a reversal where there is other, undisputed evidence in the record showing the insurer *did* have a reasonable basis for its handling of the claim. There is undisputed evidence in the record, as discussed above, that cast doubt on the validity of Rogers' claim. This evidence disputing the validity of Rogers' claim constituted a reasonable basis for CIGNA to contest the claim in the first place.

■ The same evidence constituted a reasonable basis for CIGNA to appeal the Board's award. Under Texas law at the time, CIGNA had the right to appeal the award by filing suit to set it aside:

> Any interested party who is not willing and does not consent to abide by the final ruling and decision of [the Board] ... shall within twenty (20) days after giving ... notice bring suit in the county where the injury occurred to set aside said final ruling and decision....

TEX.REV.CIV.STAT.ANN. art. 8307, § 5 (Vernon 1967). While there was evidence that supported the Board's decision, there was also undisputed evidence that would have supported a different outcome in the proceeding. Although this evidence was unpersuasive to the Board, its existence gave CIGNA a valid ground to appeal the Board's decision, and attempt to persuade another tribunal that Rogers was not entitled to the benefits he sought. CIGNA could not have been in bad faith for appealing the Board's award when there was undisputed evidence on which a reasonable tribunal could have concluded that Rogers was due a lesser award than was given.

"[W]here there is undisputed evidence that a reasonable basis existed for denying an insurance claim, the bad faith cause of action is defeated as a matter of law." *Polasek,* 847

5. Rogers does not complain on appeal of the court's ruling on this matter.

S.W.2d at 284.[6]  There was much undisputed evidence that CIGNA had a reasonable basis for its handling of Rogers' claim.

### 3.  Conclusion

■ When evidence proves a fact that establishes a party's right to judgment as a matter of law, a directed verdict is proper. *McCarley,* 687 S.W.2d at 512.  The evidence here proved that CIGNA had a reasonable basis to dispute Rogers' claim, a fact that, according to our supreme court, entitled CIGNA to judgment as a matter of law.  *See Lyons,* 866 S.W.2d at 600.  Thus, the trial court did not err in directing a verdict for CIGNA.

■ We overrule point of error two.  As noted, the trial court granted CIGNA's motion for directed verdict without stating the specific ground or grounds on which it relied.  Therefore, having determined that at least one ground in the motion for directed verdict was meritorious, we affirm the judgment. *See McCarley,* 687 S.W.2d at 512.

---

**6.**  "[C]ourts do not disregard *undisputed* evidence." *Polasek,* 847 S.W.2d at 283.