THE HOME INSURANCE
COMPANY, Appellant,

v.

Ronnell HAMBRIC, Appellee.

No. 10–94–248–CV.

Court of Appeals of Texas,
Waco.

Oct. 4, 1995.

Amanda P. Milligan, Deanne C. Ayers, Ayers & Ayers, Dallas, for appellant.

Clay Hinds, Don B. Hinds, Hinds, Shahan & Snyder, Dallas, for appellee.

Before THOMAS, C.J., and CUMMINGS and VANCE, JJ.

## OPINION

THOMAS, Chief Justice.

This is a worker's compensation case. Ronnell Hambric, appellee, suffered a back injury on September 24, 1990, while employed by Foster–Forbes, a division of American National Can (Foster Forbes). He received worker's compensation benefits for the back injury from Foster–Forbes' insurance carrier, The Home Insurance, appellant. In August 1993, after changing employers, Hambric injured his heel while working for Georgia Pacific. He had not yet returned to work at Georgia Pacific and was still receiving worker's compensation benefits for his heel injury when his compensation case against Home Insurance came to trial in March 1994.

Hambric obtained jury findings of an on-the-job injury and total and permanent disability, with the beginning date of his total incapacity being September 24, 1990. Accordingly, the court rendered a judgment

against Home Insurance for compensation benefits, medical expenses, and attorney's fees. One of Home Insurance's points on appeal is that the court erred when it refused to submit a question on whether the subsequent compensable injury to Hambric's heel contributed to his disability at the time of trial and, if so, what percentage did it contribute. We will sustain this point, reverse the judgment, and remand the cause for a new trial. We also address complaints about the accuracy and completeness of the statement of facts and expressly disapprove of the court reporter's standard practice and procedures with respect to transcribing video and written depositions into the statement of facts.

## QUESTION ON CONTRIBUTION

■ When an injured employee seeks recovery of compensation benefits for a previous injury, and he has also suffered a subsequent compensable injury, and both injuries contribute to his incapacity at trial, the insurance carrier for the prior injury is entitled to have the employee's recovery reduced by the percentage that the subsequent compensable injury contributes to his incapacity at the time of trial. Tex.Rev.Civ.Stat.Ann. art. 8306, § 12c (Vernon 1967) [1]; *Transport Insurance Company v. Mabra*, 487 S.W.2d 704, 707 (Tex.1972). To obtain a reduction, the insurance carrier must prove and obtain findings, if necessary, that the subsequent injury is compensable and that it contributes to the employee's current incapacity; the carrier must also produce evidence from which the jury can find the percentage of contribution. *Mabra*, 487 S.W.2d at 707. However, the amount or percentage of contribution need not be proved by expert medical testimony. *Klein Independent School Dist. v. Wilson*, 834 S.W.2d 3, 4 (Tex.1992). As long as "there is detailed evidence which shows in

reasonable medical probability the cause of the injury and which concerns how the [subsequent] injury contributed or probably contributed to the present disability," the jury can find the percentage of contribution, if any. *Id.*

Although Hambric claimed at trial that he was still suffering back and leg pain as a result of the September 1990 back injury, and was thus incapacitated due to his back injury, he also admitted that his incapacity at trial was affected by his August 1993 heel injury. In fact, he admitted that at the time of trial he was "a hundred percent disabled from [his] heel injury."

Home Insurance timely requested that the court submit a question on the subsequent compensable injury's percentage of contribution, if any, to any incapacity from the prior compensable injury. The court refused to submit the question on contribution. Home Insurance then objected to the charge on the ground that it omitted a question on contribution, which the court also overruled. In its fifth point, Home Insurance complains of the court's refusal to submit the question on contribution.

■ The evidence is undisputed that Hambric's subsequent heel injury was compensable under the worker's compensation statute and that it was contributing to his incapacity at the time of trial. Moreover, the evidence is factually sufficient for the jury to have found the percentage of contribution, if any, of the subsequent injury to Hambric's incapacity at trial. Consequently, the court erred when it refused Home Insurance's proposed question on contribution and when it overruled its objection to the charge. *Wilson*, 834 S.W.2d at 4. We therefore reverse the entire judgment and remand the cause for a new trial. We do not reach the remaining points of error.

---

1. Article 8306, section 12c, was repealed effective January 1, 1991, and its provisions regarding a subsequent compensable injury were then included in article 8308–4.30 of the revised civil statutes. The current version of article 8306, section 12c, can now be found at section 408.084 of the Texas Labor Code.

## THE COURT REPORTER AND THE STATEMENT OF FACTS

■ After Home Insurance contested the accuracy of the statement of facts originally filed with this court, we abated the appeal and directed the trial court to settle the dispute over the accuracy of the statement of facts and, if necessary, to make the statement of facts conform to what occurred in the trial court. Tex.R.App.P. 55(a). The trial court held a hearing under our abatement order, took evidence from Home Insurance's trial counsel and the court reporter, entered findings and conclusions, and ordered four volumes of supplemental statement of facts transmitted to our clerk. Subsequently, Home Insurance filed a motion to reverse and remand under Rule 50(e), alleging that the court reporter had lost or destroyed a portion of the record without Home Insurance's fault. Because of our disposition of this appeal under point five, we do not reach the motion to reverse and remand under Rule 50(e), which is now moot. Nevertheless, in reviewing the record of the abatement hearing and the court reporter's testimony, we find it necessary to discuss and expressly disapprove of the court reporter's standard practice and method of transcribing video depositions and written depositions into the statement of facts.

According to the court reporter, his usual or standard practice is not to make a verbatim record of testimony given by video or written deposition as it is being played to the jury or read to the jury by counsel or to note the line or page number of the portions of the deposition being admitted into evidence. He does, however, record any objections to deposition testimony as objections are made. If a party later requests a record of the deposition testimony, he always asks the parties' attorneys to furnish him a transcribed copy of the deposition, with an accompanying chart showing the portions of the deposition

actually admitted into evidence by each party, and he prepares the statement of facts from the transcribed deposition and charts.

As for this proceeding, the court reporter claimed that he did not record, either stenographically or by tape, any portion of Dr. Batjer's direct or cross-examination while the video deposition was being played to the jury.[2] Instead, he merely noted on his stenographic machine that either the plaintiff or the defendant "played the tape to the jury." When one of the parties requested that he transcribe Dr. Batjer's video testimony into the statement of facts, the reporter obtained a transcribed copy of the video deposition and requested both parties to furnish him a "chart" indicating the portions of the deposition they had presented to the jury. Hambric's attorney furnished him a chart, but Home Insurance did not respond to his request. Consequently, the portion of Dr. Batjer's video testimony included in the original statement of facts and in the supplemental statement of facts, purportedly a verbatim transcription, was prepared by the reporter without reference to any stenographic notes.

Based on the undisputed evidence, the court's findings make clear that the reporter reconstructed Dr. Batjer's video testimony from sources wholly extraneous to any stenographic notes or tapes actually made by the reporter while the witness' video testimony was being presented to the jury. In fact, the reporter admitted that he had no stenographic notes or tape recording of the portions of Dr. Batjer's video deposition played for the jury. With respect to Dr. Batjer's video testimony, the reporter admitted that he could not "affirm on [his] oath that what is contained in the statement of facts is accurate" but could "only affirm that that's what [Hambric's counsel] told [him] would make the statement of facts accurate." Notwithstanding the court reporter's testimony, the trial court found that the reporter has "correctly transcribed" Dr. Batjer's video testi-

---

2. Whether the reporter remained in the courtroom while the video was being played to the jury is not reflected by the evidence or the court's findings.

mony, as reflected by the original statement of facts and volume 3 of the supplemental statement of facts.

According to the court reporter, he also followed his usual practice with respect to the video testimony of Dr. Moody, merely noting on his stenographic machine that the video deposition was being played to the jury. He admitted that he did not make any stenographic notes of Dr. Moody's video testimony as it was being played to the jury. Yet, what purports to be a verbatim transcription of Dr. Moody's video testimony appears in the original statement of facts.[3]

SHORTHAND REPORTING

A court reporter is a person who engages in "shorthand reporting." TEX.GOV'T CODE ANN. § 52.001(4) (Vernon Supp.1995). "Shorthand reporting" and "court reporting" are defined as the "practice of shorthand reporting ... by making a verbatim record of an oral court proceeding, deposition, or proceeding before a grand jury ... using written symbols in shorthand, machine shorthand, or oral stenography." *Id.* § 52.001(5). One of the official duties of a court reporter is to furnish a transcript of the "reported evidence or other proceedings." *Id.* § 52.046(a)(5) (Vernon 1988). These statutory requirements clearly contemplate that the court reporter's verbatim transcription in the statement of facts of an oral court proceeding or deposition come from the reporter's "shorthand reporting" made contemporaneously as an event occurs or as the witness' testimony is actually given in court, whether in person or by deposition.

Contrary to the usual practice of the court reporter, which evidently has been approved by the trial court, the law does not allow a reporter to make what purports to be a verbatim record of a proceeding or a witness' testimony based solely on the parties' best recollections of what occurred or was said, when no contemporaneous shorthand notes of the proceeding or testimony were ever made. Of course, if a court reporter failed to make a verbatim record of a witness' in-court testimony, the parties could stipulate that the witness testified as reflected in a transcribed copy of his deposition and include the transcribed deposition in their stipulation. TEX. R.APP.P. 55(b). In that circumstance, the reporter could use a copy of the deposition to make a verbatim transcription of the witness' testimony, but those are not the facts here. The parties never stipulated that the transcribed copy of Dr. Batjer's video deposition represents a true, complete, and accurate record of the portions of his testimony actually admitted into evidence.

Rule 55(b) authorizes the trial court or appellate court to supplement the statement of facts with "anything" material to either party that has been "omitted." TEX.R.APP.P. 55(b). Any supplemental statement of facts ordered filed must be properly certified by the court reporter "supplying such omitted matter." *Id.* This rule cannot be used to *create* a new trial record; it merely allows the appellate record to be *supplemented* with material matters that already exist as a part of the trial record but which have been omitted from the record on appeal. *Gerdes v. Marion State Bank,* 774 S.W.2d 63, 65 (Tex. App.—San Antonio 1989, writ denied). The undisputed evidence clearly shows that the court reporter made no verbatim record— *i.e.,* no shorthand notes—of either Dr. Batjer's or Dr. Moody's video testimony as it was played to the jury, but has *created* what purports to be a verbatim transcription of their testimony from sources extraneous to his own shorthand notes.

Because the court reporter made no contemporaneous verbatim record of Dr.

---

**3.** Home Insurance's appellate counsel told the trial court at the hearing that she was not claiming the court reporter omitted any portion of Dr. Moody's video deposition from the original statement of facts, but had questioned the reporter to determine whether he had followed his usual practice in transcribing Dr. Moody's video testimony for the record. Thus, the trial court made no findings referable to Dr. Moody's video deposition.

Batjer's video testimony as it was played to the jury, the purported verbatim transcription of his video testimony, whether contained in the original or supplemental statement of facts, is not properly a part of the record in this cause, regardless of the court reporter's certification to the contrary. Therefore, if we were to reach the question, we would order the same stricken from the record. Moreover, based on the uncontroverted testimony from the court reporter that he followed his usual practice in regard to Dr. Moody's video testimony, we would likewise order the purported verbatim transcription of Dr. Moody's video testimony stricken from the original statement of facts.

Although tape recorders are commonly used by court reporters, the applicable statutes and rules do not expressly authorize or prohibit their use, either as an authorized form of shorthand reporting or as a backup to shorthand reporting.[4] However, the statutory definition of "shorthand reporting" implicitly excludes tape recorders as an authorized form of court reporting by requiring the reporter to make a contemporaneous verbatim record of a proceeding or deposition by "using written symbols in shorthand, machine shorthand, or oral stenography." *See* Tex.Gov't Code Ann. § 52.001(5). Likewise, the law implicitly requires that the verbatim transcription in the statement of facts of a proceeding or deposition be taken from the reporter's shorthand notes. *Id.* § 52.046(a)(5) (requiring the court reporter to furnish a record of the "reported evidence or other proceedings"). Thus, the law implicitly precludes a reporter from preparing a verbatim transcription in the statement of facts of a court proceeding or deposition

*solely* from a tape recording made contemporaneously with the proceeding or as the deposition testimony is given in court, when no contemporaneous shorthand notes of the proceeding or deposition testimony exist. We do not hold that a reporter can never use or refer to a tape recording made contemporaneously with a proceeding or deposition as a fail-safe backup to shorthand reporting, but merely hold that the reporter cannot prepare the statement of facts *solely* from a tape recording when no contemporaneous shorthand notes of the proceeding or deposition exist.

Accordingly, were we to reach the question, we would order that the purported verbatim transcription of the parties' opening statements in volume 1 of the supplemental statement of facts, which the court found had been "inadvertently tape recorded" by the court reporter but is unsupported by any contemporaneous shorthand notes, be likewise stricken from the record.

We recognize that, were we to strike from the record what purports to be a transcription of the deposition testimony of Dr. Batjer and Dr. Moody, our holding in that regard would be contrary to the holdings in two other cases. *Contra Rogers v. CIGNA Ins. Co. of Texas*, 881 S.W.2d 177, 180 (Tex. App.—Houston [1st Dist.] 1994, no writ); *Southern Pacific Transp. v. Hernandez*, 804 S.W.2d 557, 560 (Tex.App.—San Antonio, writ denied), *cert. denied*, 502 U.S. 952, 112 S.Ct. 406, 116 L.Ed.2d 355 (1991). In *Rogers*, the appellate court admitted that the court reporter had failed to record the video testimony of two witnesses as it was played to the jury,[5] but nevertheless allowed the

---

4. However, the legislature has expressly authorized court reporters in certain municipal courts of record to prepare a transcript of court proceedings from either written notes, transcribing equipment or *recording equipment. E.g.,* Tex. Gov't Code Ann. §§ 30.146(b) (Fort Worth), 30.327(b) (Austin), 30.389(b) (Dallas) (Vernon 1988). The Texas Supreme Court has also adopted rules that permit the district courts in certain counties to make a record in civil proceedings solely by electronic tape recording. *E.g.,* Rule Governing the Procedure for Making a Record of Court Proceedings by Electronic Re-

cording, § 2, Misc. Docket No. 90–0016 (Tex. November 9, 1990) (Brazos County). Rules for the various counties may be found at pages 341–342 in the 1995 desktop copy of the Texas Rules of Court.

5. In fact, the court reporter was absent from the courtroom while the video testimony of both witnesses was being played and returned only to record the portions of the depositions read into the record by CIGNA's counsel under the rule of optional completeness. *Rogers v. CIGNA Ins. Co.*

statement of facts to be supplemented under Rule 55(b) with the written transcriptions of their video depositions. *Rogers,* 881 S.W.2d at 180. It did so over CIGNA's objection that the court was creating part of the record rather than correcting or supplementing the record with omitted material. *Id.* The court stated its holding as follows:

> Where (1) deposition testimony is presented to the jury, (2) the deposition testimony is not transcribed into the record by the court reporter, and (3) a proper written transcription of the same testimony was made at the time the deposition was given, supplementation of the record with the transcription made at the time the deposition was given is *correcting* the record, not creating it. [citation omitted] What we are adding to the record is merely a transcription of testimony that the jury, it is undisputed, heard at trial. Under these circumstances, using deposition transcriptions to cure an omission in the statement of facts amounts to no more than correcting the statement of facts.

*Id.* at 180–81. There is no mention in the opinion of any stipulation by the parties that the original transcriptions of the video depositions represented a true and complete record of the video testimony played to the jury.

As authority for its holding, the *Rogers* court cited the decision in *Hernandez,* in which the court of appeals allowed the appellate record to be supplemented with the transcription of a written deposition that had been read to the jury by counsel but, admittedly, had not been recorded by the court reporter as it was being read to the jury. *Id.* at 180; *Hernandez,* 804 S.W.2d at 560. The *Hernandez* court notes, however, that it granted the motion to supplement the record without any objection from Hernandez. *Id.* Nevertheless, the court declared that it was not creating a new trial record but merely correcting the appellate record. *Id.*

If we reached the question, we would reject the holding in *Rogers* because the court ignores the explicit and implicit statutory requirement that the court reporter make a contemporaneous verbatim record of a court proceeding or deposition, "using written symbols in shorthand, machine shorthand, or oral stenography," as the proceeding occurs or as the deposition testimony is given in court. *See* TEX. GOV'T CODE ANN. § 52.001(5). Based on the facts recited in the opinion, the court in *Rogers* was not supplementing or correcting the appellate record with portions of the trial record that had been "omitted" from the statement of facts but, instead, was creating a portion of the trial record that had not previously existed.

We would also reject the holding in *Hernandez* to the extent that it can be interpreted as authority for allowing the appellate record to be supplemented, without any supporting stipulation of the parties, with a transcription of a witness' deposition when the reporter made no contemporaneous verbatim record of the testimony as it was being read. Both courts' holdings ignore the express requirement in section 52.046 that the court reporter furnish a transcript of the *"reported evidence or other proceeding." Id.* § 52.046(a)(5) (emphasis added). Clearly, the court reporter had never "reported" the deposition testimony in either case.

The usual practice of the court reporter in this proceeding, with respect to the preparation of so-called verbatim transcriptions of video or written depositions, is at odds with the law governing the court reporter's preparation of the record. For this reason, we disapprove of the current method and practice of purportedly constructing the record after-the-fact. We direct the trial court to institute a standard practice or procedure that will enable the court reporter to comply with all applicable statutes and rules in properly preparing and certifying the statement of facts.

*of Texas,* 881 S.W.2d 177, 179–80 (Tex.App.—    Houston [1st Dist.] 1994, no writ).