In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-05-00022-CV


______________________________





IN THE MATTER OF


THE ESTATE OF


BESSIE LEE ARRENDELL, DECEASED





 


On Appeal from the County Court at Law


Anderson County, Texas


Trial Court No. 13,455




 




Before Morriss, C.J., Ross and Carter, JJ.


Opinion by Justice Carter



O P I N I O N



 Bessie Arrendell died, at the age of ninety-four, on April 15, 2003. In late 2002, she executed
a power of attorney giving her younger sister, Helen Keeling, authority to manage her affairs, and
with her "assistance" Arrendell executed a new will January 3, 2003, at an attorney's office, which
materially altered the prior disposition of her estate. Her 1978 will (which is neither in evidence nor,
evidently, in existence) had divided all property, in equal shares, to her two children, and to the two
children of her husband, who had died in 1991. One of Arrendell's two children--Bobbie Hudson--
who had been in a caretaking role--died in 2002. The new will placed Arrendell's house in a
testamentary trust. Ultimately, the house was transferred to her grandson Mike Hudson (Bobbie's
son), and the rest of her property (except for two large certificates of deposit) to Keeling. However,
before her death, Keeling's name also became attached to those certificates of deposit.

 Keeling sought to probate the will, and Arrendell's other daughter, Dorothy Ingram, filed this
contest. A jury found that Arrendell lacked testamentary capacity when she signed the 2003 will,
that Keeling unduly influenced Arrendell to make the will, that Arrendell lacked mental capacity
when she signed the trust agreement, and that Keeling violated her fiduciary duty to Arrendell when
she made herself the beneficiary of Arrendell's two CDs. The jury also found that Keeling did not
show good faith and did not act with just cause in prosecuting the probate proceeding. The trial
court granted a motion to disregard the jury's finding of undue influence, and then rendered judgment
in favor of the appellee.

I. Issues Raised On Appeal

 Keeling contends there was legally and factually insufficient evidence to support the finding
that Arrendell lacked testamentary capacity, that she conclusively proved she (Keeling) did prosecute
the probate proceeding in good faith and with just cause, and that there is an irreconcilable conflict
between the jury's answer finding that Arrendell had no testamentary capacity and its answer finding
that Keeling had exerted undue influence over her.

 Keeling then argues the court exceeded its authority by granting appellee's requests to set
aside a deed, for monetary damages, and to place a constructive trust on the funds in Keeling's
possession for which she had been the designated "pay on death" beneficiary.

II. Incomplete Record

 We are first confronted with the question of how our review of the issues based on the
evidence may proceed in the face of an incomplete record. Two of appellee's witnesses, Dr. Lisa
Clayton and Debbie Shultz, testified by videotaped deposition. Neither videotape was introduced
as an exhibit, both tapes were excerpted rather than played in full, and no written transcription of
their testimony exists in the record either at this Court or in the trial court. Although this case has
been before this Court for over a year, neither party has made any attempt to bring that testimony
before us. When questioned about the lack of those depositions at oral argument, it was quite clear
that, although appellant's counsel believed that he had a copy of the depositions in his files, and that
they at least had some notes on them about the actual playing to the jury, there has been no effort to
attempt to get those items into the appellate record. 

III. Sufficiency Review on an Incomplete Record

 The first question--which is dispositive--is: What is the effect on our sufficiency analysis
when a portion of the evidence placed before the jury at trial is not before us for review.

 In this case, testimony presented by the appellee of a video recording (deposition) of a
medical expert and of an individual familiar with Arrendell was not transcribed by the court reporter. 
To further complicate matters, the video recording was not introduced into evidence as an exhibit,
and thus we have no record of the testimony of two witnesses considered by the jury. (1) 

 The court reporter did not transcribe the videotaped depositions. The depositions were seen
and heard by the jury, but they are not in the record furnished to this Court. The Texas Supreme
Court announced the controlling rule in Englander:

 When the complaint is that the evidence is factually or legally insufficient to support
vital findings of fact, or that the evidence conclusively refutes vital findings, this
burden cannot be discharged in the absence of a complete or an agreed statement of
facts.


Englander Co. v. Kennedy, 428 S.W.2d 806, 807 (Tex. 1968).

 Although there have since been changes in the rules governing the preparation of appellate
records, and in the rules controlling our review when a partial record is properly requested, the
caselaw involving this type of scenario has not been questioned or altered by the Texas Supreme
Court. Logically it follows that, without a complete record, it is impossible to review all the
evidence presented to the jury or to apply the appropriate evidentiary sufficiency standards in review
of the case.

 On the other hand, Keeling argues that her inability to obtain a complete record mandates a
reversal and remand, citing State Farm Fire & Casualty Ins. Co. v. Vandiver, 941 S.W.2d 343 (Tex.
App.--Waco 1997, no writ). 

IV. Supplementation or Correction of the Record

 The applicable appellate rule authorizes several methods for supplementing or correcting
the record on appeal. Tex. R. App. P. 34.6. The first method is by simple supplementation "[i]f
anything relevant is omitted from the reporter's record" as authorized by Rule 34.6(d). That section
allows a party, the trial court, or the appellate court to direct the court reporter to file the omitted
items. The section appears to govern matters recorded by the court reporter, but simply omitted from
the official record as it allows the supplementation by a letter directing the court reporter to include
the omission. Nothing in that section appears to deal with inaccuracies in the record or the failure
of the court reporter to record the proceedings. It has no application to this case. The second method
is if there is an inaccuracy in the court reporter's record. Tex. R. App. P. 34.6(e). The final method
governs records that have been lost or destroyed. Tex. R. App. P. 34.6(f). We will discuss the
applicability of the last two methods of curing the record on appeal. 

 A. Inaccuracies 

 The Texas Rules of Appellate Procedure provide a method to correct inaccuracies in the
record. Tex. R. App. P. 34.6(e). The rule begins by allowing corrections by agreement, and if the
parties cannot agree on whether or how to correct the record, the rule describes how to settle the
dispute after notice and hearing before the trial court. Finally, such correction may be made at the
appellate level by abating to the trial court for resolution. Tex. R. App. P. 34.6(e)(3).

 Whether a complete omission of a substantial portion of testimony can be handled as an
inaccurate record under Tex. R. App. 34.6(e) is a matter subject to debate. It is clear that a record
may be corrected for inaccuracies where there is a disagreement about whether the record reflects
what actually happened at trial. Ex parte Woodall, 154 S.W.3d 698, 703 n.1 (Tex. App.--El Paso
2004, pet. ref'd) (party stated transcription did not accurately reflect her testimony--but made no
attempt to use procedure to correct inaccuracy in reporter's record); Halsey v. Dallas County, Tex.,
68 S.W.3d 81, 86 (Tex. App.--Dallas 2001), rev'd on other grounds, 87 S.W.3d 552 (Tex. 2002)
(recognizing that, when parties dispute contents of record, after notice and hearing, it is court's duty
to order court reporter to correct any inaccuracies and certify corrected version). These cases rest
on the premise that the purpose of the rule is to correct any inaccuracies in the record before the
court. 

 However, some courts have allowed "correction of inaccuracies" in other situations. There
are other cases--in a variety of factual settings--where the court reporter did not transcribe a
deposition. The Waco court (changing its position from an earlier case) concluded that a reporter's
record could be supplemented to add transcription of oral reading from depositions when a
courtroom audio recording existed, but was not used originally by the reporter in creating the record. 
The Waco court had originally taken the position that only shorthand notes could be transcribed, but
then later concluded an electronic recording of the playing of the deposition could also be used. 
Vandiver, 941 S.W.2d at 348-49.

 An even closer scenario to our case was addressed in Rogers v. Cigna Ins. Co., 881 S.W.2d
177, 180-81 (Tex. App.--Houston [1st Dist.] 1994, no writ). In that case, there was also no
recording, but transcriptions existed that had been produced in discovery, thus the record could be
supplemented with them. Rogers sought reversal because the record was lost or destroyed, but also,
several months before oral argument, asked the appellate court to allow him to correct the record by
adding the transcriptions--so that the record would accurately reflect all that was heard by the jury. 
The First court concluded that the record was not lost, thus automatic reversal was inappropriate. 
The appellate court then found it to be an "omission" from the record, and then "corrected" the
statement of facts by making the deposition transcriptions a part of the record. It appears that in
Rogers the entirety of the depositions were played before the jury, as there was no complaint that
incorrect portions might be included in the record through this procedure.

 We agree it is equally reasonable to consider a record as inaccurate when a portion is
omitted--either because not taken or because taken but not transcribed--and therefore subject to this
correction procedure. However, no effort has been made to do so for the extended period of time
during which this case has been pending. 

 At oral argument counsel for appellant stated he had copies of the depositions in question,
but neither party has moved this Court to allow supplementation or correction of the record. The rule
concerning correcting inaccuracies in the reporter's record allows the appellate court to submit the
issue to the trial court for resolution "[i]f the dispute arises after the reporter's record has been filed
in the appellate court." Tex. R. App. P. 34.6(e)(3). Here, the parties do not dispute the accuracy of
the record now before us, and both agree two videotaped depositions were not recorded by the
reporter. Each side appears to be satisfied with the state of the record and relies on its incompletion
to support their argument--appellant argues she is entitled to a new trial based on an incomplete
record, and appellee argues appellant's points on sufficiency of the evidence must be denied for lack
of the record. In such a posture, this Court does not feel it proper to sua sponte abate the matter to
the trial court to correct the record. 

 B. Lost or Destroyed Record

 Keeling argues that the record cannot be obtained and that she is entitled to a new trial. 
There is no doubt Keeling asked the court reporter to prepare a complete record of the trial. A
reporter was present during the trial, and Tex. R. App. P. 13.1(a) requires the reporter to "unless
excused by agreement of the parties, attend court sessions and make a full record of the
proceedings." There is no doubt the reporter did not do so. (2) 

 Keeling cites cases holding that, if the record is lost or destroyed, the case should be reversed
and remanded for a new trial. Owens-Illinois, Inc. v. Chatham, 899 S.W.2d 722, 736 (Tex.
App.--Houston [14th Dist.] 1995, writ dism'd). In Owens-Illinois, an asbestos case involving
hundreds of plaintiffs, the summaries of the plaintiffs' medical and biographical evidence presented
in lieu of live testimony disappeared. The trial court attempted to replace the record with a juror
book, but without agreement of all parties. A new trial was ordered because the rule then in effect,
Tex. R. App. P. 50(e), required a new trial if the record was lost or destroyed without the appellant's
fault and the parties could not agree to the contents of the missing record. In Gillen v. Williams Bros.
Construction Co., 933 S.W.2d 162, 163-64 (Tex. App.--Houston [14th Dist.] 1996, writ denied),
the appellate court found that the record was "lost or destroyed"--i.e., beyond reach or attainment,
when the court reporter could not compile a record of the testimony since the reporter had been
unable to keep up with the testimony and the tape recorder failed. In Hernandez v. JLG Industries,
Inc., 905 S.W.2d 778, 780 (Tex. App.--San Antonio 1995, no writ), the court reporter became
debilitated after recording but before transcription, could not prepare the transcription, and therefore
it was determined the record was lost, and a new trial was ordered.

 The applicable rule concerning a lost or destroyed record is now found in Tex. R. App. P.
34.6(f). While the rule has been amended since the above cases were issued, it still requires proof
that the reporter's record has been lost or destroyed without the appellant's fault. Id. The cases cited
involve situations where a record was treated as being lost or destroyed. The record was
created--but no longer was in existence or transcribable, through no fault of the party. That is not
our situation. Here, no record of the testimony of these witnesses was ever recorded by the reporter. (3) 
Further, we cannot conclude that failure to produce the entire record is totally without appellant's
fault or that the proof shows compliance with the diligence requirements in Rule 34.6(f). 

 Keeling's main argument has been that the court reporter shirked his duty by failing to record,
and thus reversible error is shown. Even if this case could be found to be governed by the rules
concerning a lost or destroyed record, we disagree that a new trial is required. Under that analysis,
one of the requirements for mandating a new trial is that the loss or destruction of the court reporter's
notes must be without appellant's fault. Tex. R. App. P. 34.6(f)(2). Here, the court reporter was
present during the video recording, but wholly failed to record any of the evidence presented in the
videotapes. Under recent authority from this Court, we conclude that the failure to object to the
reporter's failure to record the depositions is important. In Rittenhouse v. Sabine Valley Center
Found., Inc., 161 S.W.3d 157, 161-62 (Tex. App.--Texarkana 2005, no pet.), we held (based in part
on our earlier opinion in Brossette v. State, 99 S.W.3d 277, 284-85 (Tex. App.--Texarkana 2003,
pet. dism'd, untimely filed), that the court reporter must record all proceedings unless the parties
expressly waive their right to have a court reporter record the proceedings--and recognized that,
without that express waiver, the court reporter's failure to transcribe the proceedings violates Rule
13.1(a) and constitutes error. 

 However, we concluded that any error of that nature was not preserved for appellate review
because counsel made no objection to the failure to report the proceedings. (4) We recognized that the
Texas Court of Criminal Appeals, in analyzing the relevant rules (which apply both to criminal and
civil cases), has held that an objection is still required to preserve the failure to record the
proceedings for appellate review. Valle v. State, 109 S.W.3d 500, 508-09 (Tex. Crim. App. 2003). (5) 

 We emphasize this is not a situation where a party contends that a single line or a short
portion of testimony was omitted. To require an objection in that circumstance would place an
unfeasible burden on counsel to watch the reporter's every move in detail--simply to be able to
timely object. But here two entire depositions were not recorded by the court reporter. One of the
depositions was the testimony of an expert concerning the mental capacity of the testator. Typically,
this type of deposition requires an explanation of the background and qualifications of the witness
in order that the witness may express an opinion, the type of analysis performed, and the opinion of
the witness. Many times such witnesses are thoroughly cross-examined. The testimony regarding
the mental capacity of the testator was the primary issue in the case. The record shows no objection,
no comments made, nothing to indicate that the reporter's inaction was brought to the attention of
the court with any attempt to correct the failure at a point at which the trial court could have
corrected the omission. Unlike either Vandiver or Rogers, there has been no attempt made to
provide any record that would show either it was or was not apparent that the court reporter was
recording the proceedings. 

 Another method of ensuring a complete record would have been to offer the videotape
recording itself into evidence. Finally, as previously stated, no effort has been made to supplement
the record from existing copies of the transcribed depositions. Rule 34.6(f)(4) states that, to be
entitled to a new trial, the appellant must show that the lost or destroyed record cannot be replaced
by agreement of the parties or the lost or destroyed exhibit cannot be replaced either by agreement
or with a copy determined by the trial court to accurately duplicate with reasonable certainty the
original exhibit. Here, there has been no attempt to obtain an agreement as to the record or have the
trial court determine if a duplicate of the exhibit (the videotape) could be produced. Consequently,
there is no proof that the missing portions of the record could not have been replaced by agreement
or that the trial court was unable to accurately duplicate the exhibit. Therefore, even if we should
conclude that this record should be treated as lost or destroyed, we cannot say the failure to obtain
the omitted portion of the record is without any fault of appellant or that appellant has proved the
requirements necessary for a new trial--that a record cannot be replaced by agreement or that an
exhibit cannot be replaced either by agreement or by trial court certification. As we have discussed,
appellant could have objected to the court reporter's failure to record two complete video recordings
of this crucial testimony, moved the court to receive the video recording into evidence, and finally
could have requested either the trial court or this Court to allow supplementation or correction of the
record by use of the transcribed copies of the depositions or the videotape as an exhibit. 

 The case on which Keeling relies to support her claim for a new trial demonstrates the very
rule we have discussed. See Vandiver, 941 S.W.2d at 348. As Keeling does here, State Farm in
Vandiver asserted that the evidence was insufficient to support the findings of the jury and urged
that, since a complete record could not be produced, it was entitled to a new trial. Id. at 345. The
Waco Court of Appeals agreed with that general statement, citing the Englander case. Id. at 345 n.1. 
The facts in Vandiver were that the court reporter was in the courtroom and was moving his hands
in such a manner that everyone involved thought a record was being made when it was not. 
However, an audiotape recording was made of all the evidence. Id. at 349. On motion, the appellate
court remanded the matter to the trial court to determine a correct statement of facts. Thereafter,
State Farm moved the appellate court to strike the corrected record. The appellate court found the
audiotape record to be proper and denied the motion to strike; thus, the motion to reverse and remand
was denied. The purpose of the rule is to allow a correct record to be presented to the appellate court
if that is possible so that the case may be determined on the merits rather than by presumptions. In
Vandiver, after remanding the case to the trial court, a proper record was presented. By contrast,
here, appellant has not requested a correction of the record. One may not sit idly by knowing that
a record is lost, destroyed, or omitted and make no attempt to comply with the rules of procedure
allowing correction or supplementation and then rely on that incomplete record to complain that a
new trial must be granted. 

V. Conclusion

 The final result is that we have an incomplete record before us for review. The controlling
caselaw clearly states that, when a record is incomplete (and the rules on partial records do not
apply--which they do not), we must presume that the missing portion of the record supports the
factual determinations made by the fact-finder. Bennett v. Cochran, 96 S.W.3d 227, 230 (Tex.
2002). Thus, all of Arrendell's fact-based contentions of error fail.

VI. Did the Court Err In the Nature of Relief Granted?

 The only remaining issue is Keeling's contention that the trial court exceeded its authority
by setting aside a deed, granting monetary damages against Keeling personally, and placing a
constructive trust on the funds in Keeling's possession for which she had been the designated "pay
on death" beneficiary. Keeling's argument assumes first that those actions by the trial court were in
the nature of ruling on causes of action, and second that the court erred by granting a post-verdict
trial amendment to allow those new causes of action to be raised. 

 We disagree with the initial assumption. A constructive trust is not a cause of action, only
a remedy for breach of fiduciary duty. Trutec Oil & Gas, Inc. v. W. Atlas Int'l, Inc., 194 S.W.3d 580,
586 n.7 (Tex. App.--Houston [14th Dist.] 2006, no pet.); see Meadows v. Bierschwale, 516 S.W.2d
125, 128-29 (Tex. 1974); Grace v. Zimmerman, 853 S.W.2d 92, 97 (Tex. App.--Houston [14th
Dist.] 1993, no writ). (6) In this case, a breach of fiduciary duty was found, involving the taking of
money by Keeling. Thus, under these facts, finding monetary damages and then creating a
constructive trust over the remaining funds is a reasonable method to attempt to effectuate the
verdict. Similarly, in this context, the order setting aside the deeds is not a new cause of action, it
is a means of effectuating the judgment entered by the court. 

 Even had this had been a cause of action rather than a mode of relief, post-trial amendments
to pleadings designed to match the pleadings to the verdict of the jury must be allowed unless the
opposing party presents evidence of prejudice or surprise or the amendment asserts a new cause of
action or defense and the opposing party objects to the amendment. Greenhalgh v. Serv. Lloyds Ins.
Co., 787 S.W.2d 938, 939-40 (Tex. 1990). There is no evidence of prejudice or surprise in the
record before us, and the amendments do not assert a new cause of action or defense. The contention
of error is overruled.

 We affirm the judgment.


 Jack Carter

 Justice


Date Submitted: November 30, 2006

Date Decided: December 21, 2006

1. There are a number of drawbacks that appear when such transcriptions are not made. When
only excerpts are played, it is often not clear which portions are actually heard by the jury, and even
when identifying information is provided, locating those segments of the recorded depositions is
equally problematic and time-consuming. When the entire deposition is played, the length of time
required for our review of the evidence is exponentially increased because we must review the
testimony in real time rather than by reading a record. 

 Even this, however, does not address the underlying policy difficulties caused by providing
reviewing courts with videotapes of testimony. Because we are a reviewing court, we are not to
consider the credibility of the witnesses. When the recording of testimony is before us, one of the
traditional reasons for that restriction on the extent of our review loses a good bit of its validity. We
now have the ability to see the witness and gauge his or her credibility or believability equally as
well as could the jury. Exactly the same material is before us as was before the jury. It thus becomes
difficult to justify restricting our review to the "cold record," because that is no longer what it is.
2. Rule 13.1 provides:


 The official court reporter or court recorder must:


 (a) unless excused by agreement of the parties, attend court sessions and make
a full record of the proceedings.


Tex. R. App. P. 13.1(a). 
3. It is not clear that this "lost or destroyed" provision applies in this case because the record
in question was never in existence and therefore was not actually lost or destroyed. Many courts
have held that, in order to obtain a new trial for this reason, an appellant must show the record or
exhibits were actually lost or destroyed. See Adams v. Transp. Ins. Co., 845 S.W.2d 323, 324-25
(Tex. App.--Dallas 1992, no writ) (trial court finding that original exhibits were lost through no
fault of appellant); Hidalgo, Chambers & Co. v. Fed. Deposit Ins. Corp., 790 S.W.2d 700, 701 (Tex.
App.--Waco 1990, writ denied) (parties agreed original exhibit was lost).
4. Rule 33 provides


 (a) In General. As a prerequisite to presenting a complaint for appellate
review, the record must show that: 

 (1) the complaint was made to the trial court by a timely request,
objection, or motion . . . ."


Tex. R. App. P. 33.1(a).
5. See Brossette, 99 S.W.3d at 284-85; Williams v. State, 937 S.W.2d 479, 487 (Tex. Crim.
App. 1996) (former Rule 11); see also Morin-Spatz v. Spatz, No. 05-00-01580-CV, 2002 WL
576513, at *8 (Tex. App.--Dallas Apr. 18, 2002, no pet.) (not designated for publication).
6. We also note that in her appeal Keeling has not attacked the jury's answer finding that she
breached her fiduciary duty to Arrendell.