Nellie **MORRIS** and Norma Lemons, Respondents,

v.

Brenda **BROWN** and Elbert Huffman, Jr., Appellants.

No. WD 52434.

Missouri Court of Appeals,
Western District.

April 1, 1997.

Paul Stingley, Fulton, for Respondents.

Robert L. Hawkins, Jefferson City, for Appellants.

Before ULRICH, C.J., P.J., and BERREY and EDWIN H. SMITH, JJ.

EDWIN H. SMITH, Judge.

Appellants, Brenda Brown (Brown) and Elbert Huffman (Huffman), appeal from a judgment of the Circuit Court of Callaway County reforming a warranty deed based on mutual mistake. Respondents, Nellie Morris (Morris) and Norma Summers Lemons (Lemons), filed a petition to quiet title and reform a warranty deed that granted a life estate to Morris and remainder interests in Lemons and her deceased sister, Louise Massey (Massey). The appellants, the children and intestate successors of Massey, filed a counterclaim to quiet title in the same property. The Honorable Ellen Roper denied respondents' petition to quiet title, but granted their petition to reform the deed, reforming the deed to convey the property to Lemons and Massey as joint tenants with right of survivorship subject to the life estate of Morris, rather than as tenants in common. Because Massey predeceased the life tenant, Morris, the deed as reformed would result in appellants being divested of any interest in the real estate.

The appellants assert that the trial court erred in denying: 1) their motion for judgment on the pleadings as to its petition to quiet title; and 2) their motion to dismiss respondents' petition to reform the deed at the close of respondents' evidence. Because we find that respondents failed to sufficiently plead or prove reformation of the deed based on mutual mistake, and because there is no material issue as to the deed creating a tenancy in common, and that appellants were entitled to judgment as a matter of law, we find the trial court erred in granting respondents' petition to reform the deed and in denying appellants' motion for judgment on the pleadings. Accordingly, we reverse the trial court's judgment reforming the deed and reverse and remand its judgment denying appellants' motion for judgment on the pleadings with directions that the trial court enter judgment quieting title to the real es-

tate pursuant to the warranty deed interpreted as creating a tenancy in common in Massey and Lemons.

## Facts

Nellie Morris (Morris) had two daughters, Norma Summers Lemons (Lemons) and Louise Massey (Massey). Morris decided that she wanted to buy a house, but did not want her name to be on the title to avoid probate. Her intent was to reside in the house and own it, and then to transfer it to her two daughters after her death. At the closing, Morris and Lemons advised the real estate agent handling the sale, Rita Stephens, of this intent. Because she was not an attorney and was unsure of how to word the deed to effectuate their intent, Stephens told them that they should speak with an attorney to ensure the deed was correctly worded. The attorney to which the agent referred them wrote his suggestion on a piece of paper and sent them back to the closing. On February 28, 1973, the grantor, Paul Boone (Boone), executed a warranty deed to real estate located in Fulton, Callaway County, which stated the property was being conveyed to "Mrs. Louise Massey and Mrs. Norma Summers [Lemons], subject to a life estate in Mrs. Nellie Morris." L.F. 25. Morris paid for the property and made it her home.

Massey died intestate on December 1, 1990, with three children surviving: Brenda Brown (Brown), Elbert Huffman (E. Huffman), appellants, and Billy Joe Huffman. During the administration of Massey's estate, the question arose as to whether Massey's heirs had a remainder interest in the real estate conveyed by the deed of 1973. The answer was "yes," provided the real estate was conveyed as a tenancy in common, as opposed to being conveyed as a joint tenancy.

Morris and Lemons filed a petition to quiet title and reform the deed, alleging that the deed was intended to create a joint tenancy with a right of survivorship, thus granting the whole property in fee simple to Lemons, subject to a life estate in Morris. Brown and E. Huffman filed an answer, counterclaim, motion to dismiss and motion for judgment on the pleadings. They claimed that because the deed created a tenancy in common, and Massey died intestate with no surviving spouse, Lemons should receive one-half interest, with Brown, E. Huffman and Morris receiving one-sixth interest, subject to Morris's life estate. Morris was to receive one-sixth because on March 8, 1995, Billy Joe Huffman quit-claimed his disputed interest in the real estate to her. He did this because he believed it was her intent that the property pass to Massey and Lemons as joint tenants with right of survivorship.

Before trial, appellants' motion for judgment on the pleadings was argued and taken under advisement by the trial court. Over appellants' objections as to relevancy, the court heard parol evidence as to the parties' intent in titling the property. At the close of respondents' evidence, appellants moved for dismissal. On February 1, 1996, the court entered the following judgment:

> The Court now finds upon clear, cogent and convincing [sic] evidence that Rita Stephens was the agent for Grantor Paul Boone (seller) and Nellie Morris (purchaser), that Mrs. Stephens although not licensed to practice law drafted the deed (Plaintiff's Exhibit 1), that Mrs. Stephens as grantor's agent failed to convey a life estate to Plaintiff Nellie Morris with a remainder entered in joint tenance [sic] to her 2 daughters Louise Massey, now deceased, and Norma Summers, now Lemons as had been requested by Nellie Morris and agreed to by Grantor Boone through his agent. Accordingly the Petitioner [sic] to Quiet Title is denied and Petition to reform deed is granted as prayed. Judgment is accordingly entered in favor of Plaintiffs and against Defendants. Costs taxed against Defendants.

L.F. 28. Appellants now appeal the judgment of the trial court granting respondents' petition for reformation and denying appellants' motion for judgment on the pleadings as to its petition to quiet title.

## I. Appellants' Motion to Dismiss Respondents'

## Petition for Reformation of Deed for Mutual Mistake

In their Point I, appellants claim that the trial court erred in denying their motion for

judgment on the pleadings as to their petition to quiet title. They contend the trial court erroneously admitted parol evidence in interpreting the deed for its intent. In their Point II, appellants claim that the trial court erred in sustaining respondents' petition for reformation based upon mutual mistake. Because we cannot logically dispose of appellants' claim in their Point I without first disposing of their claim in their Point II, we will, for purposes of our discussion and review, address their Point II as to reformation first.

## A. Standard of Review

■ A motion to dismiss at the close of a plaintiff's evidence in a court-tried case submits the issues on the merits on which plaintiffs have the burden of persuasion, requiring the trial court to determine credibility of the witnesses and to weigh the evidence, so that the appeal from the ruling on the motion is from a final determination of the issues in question. *Colombo v. Buford*, 935 S.W.2d 690, 694 (Mo.App.1996). Thus, we must affirm the judgment of the trial court denying appellants' motion to dismiss and reforming the deed, unless it is against the weight of the evidence, it is not supported by substantial evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). In reviewing the judgment, all facts and reasonable inferences are to be viewed in a light most favorable to the judgment, with the judgment to be upheld under any reasonable theory presented and supported by the evidence. *Blando v. Reid*, 886 S.W.2d 60, 65 (Mo.App.1994).

## B. Discussion

In this point, appellants claim that respondents did not sufficiently plead or prove mutual mistake, the basis on which the trial court reformed the deed, and thus, that the trial court erred in denying their motion to dismiss and sustaining respondents' petition for reformation of deed at the close of respondents' evidence. The respondents alleged in their petition that the deed required reformation because of a mutual mistake between the grantor, Boone, and the grantees,

Morris, Lemons and Massey. Their petition alleges that the deed should have been drafted to create a joint tenancy in Lemons and Massey, rather than a tenancy in common, and the absence of express language creating a joint tenancy, as required by § 442.450, was against the intent of the parties.

### 1. Sufficiency of Pleadings

■ In determining the sufficiency of the pleadings, the trial court must determine whether the petition invokes principles of substantive law that would entitle the pleading party to relief. *J.H. Cosgrove Contractors, Inc. v. Kaster*, 851 S.W.2d 794, 799 (Mo.App.1993). In reviewing the pleadings, the appellate court is required to accept as true the facts pled and to construe all allegations liberally and favorably to the pleading party. *Miller v. Enyeart*, 893 S.W.2d 901, 904 (Mo.App.1995). "The appellate court will not consider conclusions of the pleader in determining the sufficiency of the petition." *Cockrell v. Pleasant Valley Baptist Church*, 762 S.W.2d 879, 880 (Mo.App.1989).

■ A well-pled petition for reformation of a deed because of mutual mistake is characterized by three elements:

[A] preexisting agreement between the parties affected by the proposed reformation that is consistent with the change sought; that a mistake was made in that the deed was prepared other than had been agreed upon; and that the mistake was mutual, i.e., was common to both parties.

*Wates v. Joerger*, 907 S.W.2d 294, 296 (Mo. App.1995); *see also Cockrell*, 762 S.W.2d at 881. Here, in Count II of respondents' petition, they did request reformation of the deed as a result of mutual mistake. In this respect, the respondents alleged in their petition that "the *parties* to the deed of February 28, 1973 and, in particular, the Grantees thereof Louise Massey, Norma Summers (now Lemons) and Nellie Morris intended that the interest of the Grantees be a survivorship interest...." L.F. 6 (emphasis added). Although this allegation is not a model in pleading reformation of a warranty deed for mutual mistake and does not specifically mention the grantor, Boone, as to his intent

in regard to the deed, giving it a liberal and favorable construction to respondents, we cannot say that respondents' petition as a whole failed to adequately plead the three necessary elements of reformation based on mutual mistake. Accordingly, we find the trial court did not err in failing to dismiss respondents' petition for a failure to properly plead reformation.

### 2. Sufficiency of Evidence

Appellants next contend, even assuming, *arguendo*, that respondents properly pled reformation, they failed to introduce sufficient evidence from which the trial court could find a preexisting agreement of all the parties necessary to establish a mutual mistake on which to base reformation. We agree.

Section 442.450 provides: "Every interest in real estate granted or devised to two or more persons, other than executors and trustees and husband and wife, shall be a tenancy in common, unless expressly declared, in such grant or devise, to be in joint tenancy." Respondents concede that the express language in the deed necessary to create a joint tenancy in Massey and Lemons is not present. However, they claim that this occurred as a result of a mutual mistake in the drafting of the deed requiring its reformation to create the joint tenancy intended by the parties to the deed.

We first note that § 442.450 does not prevent reformation of a deed to create a joint tenancy. *McVey v. Phillips*, 259 S.W. 1065, 1066 (Mo.1924). Reformation of a written instrument is an extraordinary equitable remedy and should be granted with great caution and only in clear cases of fraud or mistake. *Link v. Kroenke*, 909 S.W.2d 740, 745 (Mo.App.1995). To support reformation for mutual mistake, the evidence must be clear, cogent, and convincing and upon testimony entirely exact and satisfactory. *Urban Expansion, Inc. v. Fireman's Fund*, 592 S.W.2d 239, 242 (Mo.App.1979); *Landes v. State Farm Fire & Cas. Co.*, 907 S.W.2d 349, 359 (Mo.App.1995). In order to support reformation of a deed for mutual mistake, the party seeking reformation has the burden to show that: 1) a preexisting agreement between the parties affected by the proposed reformation is consistent with the change sought; 2) a mistake was made in that the deed was prepared other than had been agreed upon; and, 3) the mistake was mutual, i.e., was common to both parties. *Wates*, 907 S.W.2d at 296; *see also Cockrell*, 762 S.W.2d at 881.

Respondents introduced parol evidence in an attempt to prove that when the deed was drafted, the true intent of the parties was to create a life estate in Morris and a joint tenancy with right of survivorship in Massey and Lemons. Appellants objected at trial to this testimony on the basis that the deed was unambiguous and was required to be construed based on an examination of the four corners of the deed alone. However, as respondents correctly assert, an exception to this rule arises when mutual mistake is alleged to reform a deed, such as the case here. *See Arnett v. Venters*, 673 S.W.2d 67, 74 (Mo.App.1984) (holding that parol evidence is admissible on the issue of mutual mistake of the grantor and grantees in conveying real estate supporting reformation of a deed). Thus, because we find it was not error for the trial court to admit parol evidence in determining if a mutual mistake had occurred justifying reformation, the issue for us to decide is whether the evidence supports reformation of the deed based upon the mutual mistake claimed by respondents, taking into account the parol evidence introduced.

The parties agree that this case turns on whether the evidence was sufficient to establish that the parties had a preexisting agreement that the deed was to create a joint tenancy in Massey and Lemons and that this agreement was thwarted by the language of the deed. Reformation presupposes a valid prior agreement evidencing a meeting of the minds. *Everhart v. Westmoreland*, 898 S.W.2d 634, 637 (Mo.App.1995). The agreement need not be in writing, *Link v. Dowdy*, 816 S.W.2d 927, 930 (Mo.App.1991), or provide for any particular language to be included in the deed. *Bollinger v. Sigman*, 520 S.W.2d 710, 712 (Mo.App.1975). To establish the existence of a preexisting agreement, "it is sufficient that the parties agreed to accomplish a particular object by the instrument to

be executed and that such instrument as executed is insufficient to effect their intention." *Flaspohler v. Hoffman,* 652 S.W.2d 703, 709 (Mo.App.1983). With these principles to guide us, we have reviewed the entire transcript and, applying our standard of review, find insufficient evidence to establish a preexisting agreement between the grantor and grantees to title the real estate in Massey and Lemons as joint tenants.

On this issue, the parties clash over whether there was ever any agreement with the grantor, Boone, to convey the property to Massey and Lemons as joint tenants. Both parties agree that there was never any specifics discussed personally with Boone concerning how the property was to be conveyed. In fact, other than the realtor, Rita Stephens, respondents and their witnesses admitted that they never personally talked to Boone about the sale. The disagreement occurs over whether there was an implied agreement with Boone to title the property in whatever manner the grantees desired, which respondents argue constituted a preexisting agreement sufficient to establish mutual mistake.

Appellants contend that because Boone never specifically agreed with the grantees to title the property in Massey and Lemons as joint tenants, there never was a preexisting agreement with the grantor, and thus, no mutual mistake supporting reformation. On the other hand, respondents contend that it was not necessary to discuss the specifics of the titling with Boone in that it was implied in the sale agreement that Boone agreed to convey the land in whatever form the grantees desired. They argue that this alone is sufficient to establish a preexisting agreement between the grantor and grantees to find a mutual mistake supporting reformation of the deed. In support of their argument, respondents rely on the testimony of the realtor, Rita Stephens, who handled the sale for the grantor. She testified that the real estate contract here had been lost or destroyed. However, she testified that in this case, as is the case in most sales of real estate, Boone's only interest or concern in selling the real estate was to obtain the price at which the land was offered, and that it was implied in the agreement to sell, that Boone agreed to title the property in whatever manner the grantees chose, otherwise there would not be a sale.

This argument of respondents would certainly have some merit if, in fact, there was a showing that Boone at the time of conveyance was aware of how the grantees wanted the property titled. Otherwise, how could it be said that Boone intended the real estate to be titled as a joint tenancy and it was not, and thus, the alleged mistake in the language of the deed frustrated his intent as to the titling of the property, creating a mutuality of mistake as to what interest was conveyed by the deed? On this issue, there is no evidence that Boone was ever advised that the property was to be titled in Massey and Lemons as joint tenants. Respondents suggest that this is unimportant in that Stephens was Boone's agent and she knew of the grantees' intent. The record does not reflect this fact. In this regard, Stephens testified as follows:

Q. When Ms. Morris and Ms. Summers, who is now Ms. Lemons, came into your office, you talked about this house on Sixth Street; is that right?

A. Right.

Q. And did you talk about how they wanted the house to be titled?

A. That didn't come up. The contract read to Nellie Morris from Paul Boone.

Q. The contract did. The contract for the sale of the house. You're not referring to the deed?

A. I'm talking about the sale contract.

Q. Okay.

A. The contract of sale.

Q. Okay. I just wanted to make sure I understood you correctly. So the contract to sell the house said to Nellie Morris?

A. Right.

Q. Didn't say anything else about anybody else.

A. Not at that time.

Q. Okay. Why—at what point did the language change?

A. When we went to close it and make a deed, it mentioned that she wanted to leave a life estate in it and her daughters on it. And I suggested she go to Mr. Boyd, the attorney.

Q. Who mentioned that she wanted to do that?

A. I did. She went—

Q. She mentioned she wanted the life estate and leave it to her daughters? That's what I'm asking.

A. That she wanted the two daughters and she wanted to still live there.

Tr. 31–32. She at no time testified that respondents advised her that they wanted the property titled in Massey and Lemons as joint tenants.

Because there is no evidence in the record to indicate that the grantor, Boone, or his real estate agent, Stephens, were ever aware that the grantees wanted the property titled as a joint tenancy, we find the evidence to be insufficient from which to infer that the preexisting agreement between the grantor and grantees, necessary to establish mutual mistake for reformation of the deed, existed. Thus, we find the trial court erred in finding mutual mistake and granting the reformation of the warranty deed as requested by respondents.

 Although we could, we need not rest our decision on a finding of no preexisting agreement on the part of the grantor. Even if there had been a preexisting agreement between Boone and the grantees, respondents still must fail in their bid for reformation of the deed.

As we have previously noted, in order to be entitled to reformation of the deed for mutual mistake, respondents were required to show that a preexisting agreement to convey the property as joint tenants existed between Boone, as grantor, and Massey, Lemons, and Morris, as grantees. As to Massey, we have reviewed the transcript and cannot find any evidence from which to infer that the titling of the property was ever discussed with her, or that she intended the property to be titled in her sister and her as joint tenants. None of respondents' witnesses alluded to any conversation with Mas-

sey or what her intent was as to the titling of the property. In the absence of any evidence establishing a preexisting agreement with Massey as to the titling of the property as a joint tenancy, respondents' claim for reformation must fail. *See Wates,* 907 S.W.2d at 296 (holding that in a case of reformation of a warranty deed based upon a mutual mistake in failing to include in the deed express language to create a joint tenancy, there must be evidence from which to infer that the deceased grantee and alleged joint tenant had agreed at the time of conveyance to titling the property as a joint tenancy).

## II. Appellants' Motion for Judgment on the Pleadings

### A. Standard of Review

 "A motion for judgment on the pleadings should not be sustained where a material issue of fact exists but should be sustained if, from the face of the pleadings, the movant is entitled to judgment as a matter of law." *Adams v. VanWormer,* 892 S.W.2d 655, 656 (Mo.App.1994), *cert. denied,* —— U.S. ——, 116 S.Ct. 141, 133 L.Ed.2d 87 (1995). A motion for judgment on the pleadings should be granted when the facts pled by the opposing party, even if assumed to be true, are insufficient as a matter of law. *Id.*

### B. Discussion

Appellants claim in this point that the trial court erred in denying their motion for judgment on the pleadings as to their petition to quiet title in that there was no material issue of fact and that as a matter of law they were entitled to judgment as pled. In support of this claim, appellants argue that the trial court was restricted to the four corners of the deed and that under § 442.450, the deed could only be interpreted to create a tenancy in common in Massey and Lemons. We agree.

 Respondents concede that the warranty deed is not ambiguous on its face. Rather, their claim revolves around their contention that the deed, although not ambiguous on its face, contained a "latent ambi-

guity" in that it did not reflect the intent of the parties in conveying the property. Absent any ambiguity on the face of the deed, as conceded here, and having already lost on their claim that there was a mutual mistake warranting reformation of the deed, in interpreting the deed, respondents are stuck with the language of the deed and cannot rely on parol evidence to establish an intent, other than the intent found in the language of the deed. *See Senseney v. Jeffrey,* 799 S.W.2d 636, 638 (Mo.App.1990) (holding that in determining the ownership under a deed, we must apply the cardinal rule of interpreting a deed and look to the intent of the grantor, which intent is to be ascertained by examining the words within the four corners of the deed); *see also CIT Group/Sales Financing, Inc. v. Lark,* 906 S.W.2d 865, 868 (Mo.App. 1995) (holding that in the absence of ambiguity or mutual mistake, the parol evidence rule bars evidence of agreements prior to or contemporaneous with an instrument).

▪ Being constrained by the four corners of the deed, we look to the granting language of the deed which provides as follows: "[To] Mrs. Louise Massey and Mrs. Norma Summers [Lemons], subject to a life estate in Mrs. Nellie Morris." L.F. 25. As stated *supra,* § 442.450 provides that in the absence of any express declaration of joint tenancy, we must construe interests created by a deed as tenancies in common. *Montgomery v. Clarkson,* 585 S.W.2d 483, 485 (Mo. banc 1979). Here, because there does not appear any express language in the deed which could be construed as conveying the property in question to Massey and Lemons as joint tenants, we find that as a matter of law the only interest of Massey and Lemons created in the real estate was a tenancy in common, subject to a life estate in Morris. In light of this finding, we conclude that as to the pleadings of the parties there was no material issue of fact as to what estate was created by the deed. Thus, in determining if the trial court erred in denying appellants' motion for judgment on the pleadings, we need only decide whether appellants were entitled as a matter of law to have title quieted in them as to their respective remainder interests in the real estate as a result of the tenancy in common created by the deed.

▪ A suit to quiet title is a special statutory action to adjudge the respective estates, titles and interests of several claimants to land. *Vanschoiack v. Adkins,* 854 S.W.2d 432, 435 (Mo.App.1993). A quiet title action is appropriate in cases of ownership controversy where neither party admits the title of the other. *Massachusetts Gen. Life Ins. Co. v. Sellers,* 835 S.W.2d 475, 482 (Mo. App.1992). Here, both appellants and respondents filed petitions asking for title to be quieted in them as to the real estate in question. Appellants asked that title be quieted with the deed being interpreted pursuant to § 442.450 as creating a tenancy in common. The respondents asked that the title be quieted after the deed had been reformed for mutual mistake to reflect a joint tenancy. When the parties filed their respective petitions to quiet title, the life tenant, Morris, was still alive. The question then arises whether a suit to quiet title could be brought by appellants and Lemons to determine their remainder interests in the real estate while the life tenant, Morris, was alive, or whether the proper action would have been to bring a declaratory judgment action to determine and declare the respective interests of the remaindermen in the real estate.

▪ Without directly holding the same, it would seem logical that a trial court could in a quiet title action determine the respective remainder interests of the remaindermen while the life tenant remained alive. *See Thurmon v. Ludy,* 914 S.W.2d 32, 34 (Mo. App.1995) (holding that the daughter of the decedent did not have standing to bring a quiet title action because she neither had title to the property by record title or possession nor a remainder interest in it). As it turns out, we need not address this question for purposes of this appeal, in that during its pendency, respondents' counsel, pursuant to leave of this court, filed a suggestion of death indicating that the life tenant, Morris, died on January 30, 1997. In any event, we find that, as a matter of law, appellants and respondents are entitled to have title quieted in them as to their respective interests in the

real estate pursuant to the deed as interpreted by us herein as creating a tenancy in common in Massey and Lemons. *See Robertson v. North Inter–River Drainage District,* 842 S.W.2d 544, 547 (Mo.App.1992) (holding that in a quiet title action the court must adjudicate the respective interests of the parties, regardless of which party is entitled to relief).

## Conclusion

The trial court's judgment reforming the warranty deed is reversed. The trial court's judgment denying appellants' motion for judgment on the pleadings as to their petition to quiet title is reversed and remanded with directions that, consistent with this opinion, the trial court is to enter its judgment quieting title in the real estate in question pursuant to the warranty deed interpreted as creating a tenancy in common in Massey and Lemons.

All concur.