In re Angelia L. SCHUTZ, Debtor.

Fred C. Moon, Chapter 7
Trustee, Plaintiff,

v.

Bank of America, F.S.B., Defendant.

Bankruptcy No. 99–60585.
Adversary No. 99–6027.

United States Bankruptcy Court,
W.D. Missouri.

Nov. 12, 1999.

Raymond I. Plaster, Springfield, MO, for plaintiff.

David G. Wasinger, Murphy & Tobben, St. Louis, MO, for defendant.

## MEMORANDUM OPINION

ARTHUR B. FEDERMAN, Bankruptcy Judge.

Chapter 7 Trustee Fred C. Moon (the Trustee) filed a Complaint to Determine Lien Priority and to Compel Turnover of Estate Property as to a 1996 Sunshine Manufactured Home, VIN ALSO1258, (the Sunshine) on the grounds that no security interest in favor of defendant Bank of America, F.S.B., (BOA) ever attached to the Sunshine. The parties agreed that the facts are not in dispute, and that this

adversary proceeding should be decided as a matter of law. They then filed cross Motions for Summary Judgment, which this Court denied when it discovered a disputed fact. The parties have now resolved this dispute and again ask that the issue be decided on the pleadings. This is a core proceeding under 28 U.S.C. § 157(b)(2)(k) over which the Court has jurisdiction pursuant to 28 U.S.C. § 1334(b), 157(a), and 157(b)(*l*). The following constitutes my Findings of Fact and Conclusions of Law in accordance with Rule 52 of the Federal Rules of Civil Procedure as made applicable to this proceeding by Rule 7052 of the Federal Rules of Bankruptcy Procedure. For the reasons set forth below I find that BOA can use parol evidence to correct the scrivener's error and retroactively reform the security agreement to accurately reflect the intent of the parties. As such, BOA has a valid perfected security agreement in the Sunshine, therefore, I will grant summary judgment in favor of BOA.

## FACTUAL BACKGROUND

The stipulated facts are as follows. On February 10, 1999, debtor Angelia Schutz, as a buyer, signed a "plain language purchase agreement," provided by seller Butler Mobile Home Sales, Inc. (Butler), agreeing to purchase a "Sunshine–382" manufactured home with the serial number "AL–S–01258."[1] The purchase agreement indicates that on February 13, 1996, she paid to Butler the sum of $1,056.00 as a down payment on the manufactured home. On February 14, 1996, Ms. Schutz and Butler executed a Retail Installment Contract and Security Agreement (the Agreement), which was assigned to BankAmerica Housing Services, a division of BOA. The Agreement erroneously described the Manufactured Home as a 1996 Titan Home, Model S–382.[2] The serial number, or vehicle identification number (the VIN), was not listed in the Agreement. Also on February 14, 1996, Ms. Schutz signed an Application for Missouri Title and License identifying the manufactured home as a "1996 Sunshine, VIN ALS01258."[3] On that same date she signed an application for insurance on the manufactured home with Billings Farmers' Mutual Insurance Company of Billings, Missouri.[4] The insurance application sought coverage for a "1996 Sunshine # ALS01258."[5] On February 23, 1996, BOA sent a notice to Ms. Schutz informing her of certain errors in the Agreement. The notice stated that the Agreement disclosed the make of the manufactured home as a 1996 Titan Homes, Inc. when it should have disclosed the make as a "Sunshine Homes, Inc." The notice further noted that the serial number was not disclosed in the Agreement, when it should have been disclosed as "ALS01258."[6] The notice was identified as being sent on behalf of "the dealer and BAHS," but it was not signed by any representative of either BOA or Bank of America Housing Services. The Agreement itself was never modified, or any modified document signed by Ms. Schultz. The State of Missouri issued a Certificate of Title on March 5th, 1996, correctly listing a 1996 Sunshine Model Manufactured Home with a vehicle identification number of ALSO1258 and indicating that BOA was a lien holder. Ms. Schutz filed her Chapter 7 bankruptcy petition on April 5, 1999.

The trustee filed this Complaint seeking a determination that BOA does not hold a valid and properly perfected security interest in the manufactured home, and that it should, therefore, be liquidated by the trustee for the benefit of debtor's unse-

---

1. Doc. # 17 (Stipulation of Facts), Ex. # 7.

2. *Id.*, Ex. # 1.

3. *Id.*, Ex. # 3.

4. *Id.*, Ex. # 6.

5. *Id.*

6. *Id.*, Ex. # 4.

cured creditors.[7] BOA maintains that it has a valid security interest in the Sunshine, that the Certificate of Title is not misleading to any third party, and that the parol evidence rule requires the introduction of extrinsic evidence to correct a mutual mistake in the Agreement.

## DISCUSSION

■ The perfection of a lien on a manufactured home is governed by section 700.350 of Missouri's Revised Statutes.[8] The creation of a security interest in a manufactured home, however, is governed by Article 9 of Missouri's Uniform Commercial Code.[9] The creation of a security interest must be considered separately from perfection because "[t]he fact that title certificate notation is required in most states to perfect a security interest in a motor vehicle in the hands of the ultimate user has no effect upon the creation of a security interest in a motor vehicle."[10] Before a security interest can be either enforced or perfected it must properly attach to the collateral in question. The attachment and enforceability of the security interest in motor vehicles is governed by section 400.9–203 of Missouri's Revised Statutes. That section provides that "a security interest is not enforceable against the debtor or third parties with respect to the collateral and does not attach unless . . . the debtor has signed a security agreement which contains a description of the collateral."[11] The issue here is whether this Court can consider all of the documents involved in this transaction to determine if they, taken together, satisfy the requirement that a security agreement must contain a description of the collateral before the agreement attaches to the collateral.

A security agreement by definition is a contract entered into voluntarily.[12] Section 400.9–102(2) states that "[t]his article applies to security interests created by contract."[13] The comment to section 400.9–102 states that the "main purpose of this Section is to bring all consensual security interests in personal property and fixtures under this Article."[14] Therefore, any interpretation of Article 9 of Missouri's Uniform Commercial Code is dependent upon the basic tenets of Missouri contract law. The most basic tenet of that law is that a valid contract must reflect the intention of the parties at the time it was signed. I find that the Agreement in this case does not reflect the intention of the parties. Butler clearly intended to sell to Ms. Schutz a 1996 Sunshine Manufactured home. The plain language purchase agreement so reflects, the fact that Butler delivered and Ms. Schutz accepted the Sunshine so reflects, and the notice sent to Ms. Schutz by BOA ten days after the Agreement was signed so reflects. Moreover, Ms. Schutz intended to purchase the Sunshine as reflected by the plain language purchase agreement she signed, the Sunshine she accepted when it was delivered, the Application for Missouri Title and License she submitted, and the application for insurance she sent to Billing Farmers' Mutual Insurance Company of Billings, Missouri. The issue I must decide, however, is whether I can use this extrinsic evidence to correct the mutual mistake that is contained in the Agreement. The use of extrinsic evidence to interpret a contact is governed by the Parol Evidence Rule. Missouri's Parol Evidence Rule "precludes the use of extrinsic evidence to vary or contradict the

7. 11 U.S.C. § 544.

8. Rev.Stat.Mo. § 700.350 (1988).

9. *See e.g., Bradley v. K & E Investments, Inc.,* 847 S.W.2d 915 (Mo.Ct.App.1993); *Shelton v. Erwin,* 472 F.2d 1118 (8th Cir.1973).

10. *Bradley,* 847 S.W.2d at 921.

11. Mo.Stat.Ann. § 400.9–203(1)(a) (Supp. 1999).

12. *See Id.* at § 400.9–102(2) (1994).

13. *Id.*

14. *Id.*

terms of an unambiguous and complete written instrument absent fraud, common mistake, accident or erroneous omission." [15] In *Unlimited Equipment Lines, Inc.*, the Court allowed parol evidence to show that because of mutual mistake the contract did not express what the parties to the contact intended.[16] The Court held that "a contract must be read according to the parties' intent despite clerical errors and omissions." [17] The *Unlimited* Court also found that parol evidence is admissible to correct typographical errors in order to construe a provision according to the parties' intent.[18]

In *Morris v. Brown*, the Court discussed the use of parol evidence to reform a deed that does not express the intent of the parties due to a mutual mistake.[19] In that case the court articulated the following three elements that a well-pled petition for reformation of a deed must contain: (1) a preexisting agreement between the parties affected by the proposed reformation that is consistent with the change sought; (2) an assertion that a mistake was made in that the deed did not reflect what had been agreed upon; and (3) an assertion that the mistake was common to both parties.[20] After discussing these elements, the Court of Appeals held that it was not error for the trial court to admit parol evidence in determining if a mutual mistake had been made in drafting the deed, despite the fact that the deed was not ambiguous on its face.[21] While the case at hand involves a security agreement, not a deed, the three elements offer guidance to this Court. The plain language purchase agreement, signed by both Ms. Schutz and a representative of Butler four days before the Agreement was signed, indicates Butler's intent to sell and Ms. Schutz's intent to purchase a 1996 Sunshine Manufactured Home, VIN AL–S–01258.[22] The Agreement, however, describes the manufactured home as a 1996 Titan Homes, Inc.[23] Based upon the parties' conduct both before and after signing the Agreement, I find that the Agreement did not reflect what had been agreed upon. I also find that the mistake was common to both parties in that neither Butler nor Ms. Schutz noticed the wrongly identified collateral at the time they signed the Agreement. But, BOA, as the assignee of the Agreement, did notice the mutual mistake and notified Ms. Schutz of the error ten days later.

In *Kopff v. Economy Radiator Service*, the Court found it appropriate to reform an insurance contract that failed to reflect the agreement of the parties.[24] The Court stated that the "plaintiff and defendant were mutually mistaken as to the coverage limits shown in the policy ... the contract did what neither intended it to do.... Reformation was appropriate so that the policy accurately reflected the underlying agreement." [25] In this case, neither party intended the security agreement to list a 1996 Titan as the manufactured home to be purchased, therefore, reformation of the contract is appropriate.

 The trustee relies on *Orix Credit Alliance v. Omnibank, N.A.*, in his response to BOA's motion for summary judgment for the premise that parol evidence is not admissible to vary the written terms of an unambiguous contract.[26] I

15. *Unlimited Equipment Lines v. Graphic Arts*, 889 S.W.2d 926, 933 (Mo.Ct.App.1994).

16. *Id.*

17. *Id.*

18. *Id.*

19. 941 S.W.2d 835 (Mo.Ct.App.1997).

20. *Id.* at 839.

21. *Id.* at 840.

22. Doc. # 17, Ex. # 7.

23. *Id.* at Ex. # 1.

24. 838 S.W.2d 449, 453 (Mo.Ct.App.1992).

25. *Id.*

26. 858 S.W.2d 586, 594 (Tex.Ct.App.1993).

agree. But the issue in this case is not whether the Agreement was ambiguous. The issue is whether the collateral description in the Agreement is the result of a mutual mistake. I find that it is, and that under Missouri law, the parol evidence rule allows extrinsic evidence to correct a mutual mistake.

The trustee also relies upon *Fisher v. Mikco Grain Co.,* for the premise that parol evidence cannot be relied upon to furnish a description, but only to aid in the description already furnished.[27] Again, this case deals with a collateral description that was ambiguous or insufficient. But that is not the issue in this case. The Agreement is not ambiguous. It is wrong. Clearly, the scrivener typed in the wrong make for the manufactured home Ms. Schutz believed she was buying and Butler believed it was selling. The mistake was mutual, and BOA quickly discovered the error and notified Ms. Schutz of that error. Ms. Schutz accepted delivery of the manufactured home she intended to buy, and did, in fact buy. She titled and insured the manufactured home she intended to buy. BOA's lien in that manufactured home was duly noted on the Certificate of Title. The Agreement indicated that the manufactured home would be located at 5262 County Road 1300, West Plains, Missouri 65775, and that is where the Sunshine is located. In *Exchange Bank of Kahoka v. Bash,* the Court held that "[a]n accurate statement of the location and possession of the property may cure an otherwise insufficient description and is controlling."[28] *Bash* involved an incomplete description of a road grader in a chattel mortgage in that the model number was inaccurate and the serial number was missing. The chattel mortgage, however, contained a description of the location where the grader

would be kept. The Court found that the collateral description was sufficient if it was definite enough to enable a third party, aided by inquiries suggested by the instrument, to identify the collateral.[29] As in *Bash,* the Agreement in this case does contain an accurate address where a third party could find the collateral. And by making very limited inquiries, a third party would discover that the collateral in question was the Sunshine, not a Titan, and that the Certificate of Title noted a lien by BOA.

Finally, the trustee relies on *General Motors Acceptance Corporation (GMAC) v. Bolinger (In re Bolinger).*[30] Factually, *Bolinger* is very similar to this case. On January 12, 1979, debtor purchased a 1976 Pontiac. The security agreement listed a 1976 Chevrolet, though it listed the VIN for the Pontiac. On June 21, 1979, debtor filed a bankruptcy petition. After the bankruptcy was filed, GMAC filed an affidavit from the manager of the dealership that sold the car to debtor. The affidavit purported to correct the error in the security agreement.[31] The Michigan Bankruptcy Court held that the misidentification of the collateral under Michigan law caused the security agreement to be inadequate.[32] The *Bolinger* case is distinguishable for two reasons. First, no one raised the issue of mutual mistake, nor is there any discussion at all of the parol evidence rule in Michigan. Second, the court in *Bolinger* indicated that it would have accepted the affidavit as a means of correcting the error had the affidavit been submitted prior to the filing of the bankruptcy case:

> The attempt of the plaintiff G.M.A.C. to correct the defective description in the installment might have been effective but for the fact that it did not occur until well after the date of filing. By

---

27. 404 S.W.2d 752, 754 (Mo.Ct.App.1966).

28. 234 S.W.2d 341, 346 (Mo.Ct.App.1950).

29. *Id.* at 344–45.

30. 3 B.R. 186 (Bankr.E.D.Mich.1980).

31. *Id.* at 187.

32. *Id.* at 188.

virtue of section 70(c) of the Bankruptcy Act, the trustee becomes a hypothetical lien creditor which operates to prevent the plaintiff herein from acting to retroactively preserve its secured status.[33]

In this case, BOA acted to correct the defective description within ten days of the Agreement, and more than 2 years before the bankruptcy was filed. I find that under the facts of this case, and under Missouri law, *Bolinger* is not controlling.

Under Missouri law an error on the part of a scrivener that results in a mutual mistake as to the intent of the parties at the time they negotiated the contract justifies reformation of the contract to reflect the intent of the parties.[34] Since the reformation of the contract simply enforces the parties' intent, the effective date of the reformed contract relates back to the time the contract was signed.[35] Thus, the extrinsic evidence considered by this Court under the Parol Evidence Rule is admissible because that evidence enables the Court to accurately discern the intent of the parties—and the Agreement—at that earlier time.

For all of the above reasons, I find that BOA holds a valid, attached, and enforceable security interest that is reformed to reflect the intent of the parties, that the security interest was properly perfected, and that, therefore, BOA holds a valid lien in the Sunshine.

An ORDER in accordance with this Memorandum Opinion will be entered this date.

**33.** *Id.*

**34.** *Hardin v. Ray*, 404 S.W.2d 764, 768 (Mo. Ct.App.1966).

**35.** *Monroe v. Martin*, 726 So.2d 701, 703 (Ala. Civ.App.1998) (holding that unless a party against whom reformation is sought is a bona fide purchaser for value reformation will be effective as of the date of the instrument to be reformed). *See also Franklin v. Cunningham*, 187 Mo. 184, 86 S.W. 79, 81 (1905) (holding that a deed, once reformed, vests in recipients as of the date the deed was executed).