In the Matter of the ESTATE OF
Bessie Lee ARRENDELL,
Deceased.

No. 06–05–00022–CV.

Court of Appeals of Texas,
Texarkana.

Submitted Nov. 30, 2006.

Decided Dec. 21, 2006.

Opinion Overruling on Rehearing
Jan. 23, 2007.

Daniel F. Dean, Jeffrey L. Coe, Dean, Coe & Associates, PC, Palestine, for appellant.

James D. Hankins, Sr., Freeman & Hankins, LLP, Palestine, M. Keith Dollahite, M. Keith Dollahite, PC, Tyler, for appellee.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

Opinion by Justice CARTER.

Bessie Arrendell died, at the age of ninety-four, on April 15, 2003. In late 2002, she executed a power of attorney giving her younger sister, Helen Keeling, authority to manage her affairs, and with her "assistance" Arrendell executed a new will January 3, 2003, at an attorney's office, which materially altered the prior disposition of her estate. Her 1978 will (which is neither in evidence nor, evidently, in existence) had divided all property, in equal shares, to her two children, and to the two children of her husband, who had died in 1991. One of Arrendell's two children—Bobbie Hudson—who had been in a caretaking role—died in 2002. The new will placed Arrendell's house in a testamentary trust. Ultimately, the house was transferred to her grandson Mike Hudson (Bobbie's son), and the rest of her property (except for two large certificates of deposit) to Keeling. However, before her death, Keeling's name also became attached to those certificates of deposit.

Keeling sought to probate the will, and Arrendell's other daughter, Dorothy Ingram, filed this contest. A jury found that Arrendell lacked testamentary capacity when she signed the 2003 will, that Keeling unduly influenced Arrendell to make the will, that Arrendell lacked mental capacity when she signed the trust agreement, and that Keeling violated her fiduciary duty to Arrendell when she made herself the beneficiary of Arrendell's two CDs. The jury also found that Keeling did not show good faith and did not act with just cause in prosecuting the probate proceeding. The trial court granted a motion to disregard the jury's finding of undue influence, and then rendered judgment in favor of the appellee.

## I. Issues Raised On Appeal

Keeling contends there was legally and factually insufficient evidence to support the finding that Arrendell lacked testamentary capacity, that she conclusively proved she (Keeling) did prosecute the probate proceeding in good faith and with just cause, and that there is an irreconcilable conflict between the jury's answer finding that Arrendell had no testamentary capacity and its answer finding that Keeling had exerted undue influence over her.

Keeling then argues the court exceeded its authority by granting appellee's requests to set aside a deed, for monetary damages, and to place a constructive trust on the funds in Keeling's possession for which she had been the designated "pay on death" beneficiary.

## II. Incomplete Record

We are first confronted with the question of how our review of the issues based on the evidence may proceed in the face of an incomplete record. Two of appellee's witnesses, Dr. Lisa Clayton and Debbie Shultz, testified by videotaped deposition. Neither videotape was introduced as an exhibit, both tapes were excerpted rather than played in full, and no written transcription of their testimony exists in the record either at this Court or in the trial court. Although this case has been before this Court for over a year, neither party has made any attempt to bring that testimony before us. When questioned about the lack of those depositions at oral argument, it was quite clear that, although appellant's counsel believed that he had a copy of the depositions in his files, and that they at least had some notes on them about the actual playing to the jury, there has been no effort to attempt to get those items into the appellate record.

## III. Sufficiency Review on an Incomplete Record

The first question—which is dispositive—is: What is the effect on our sufficiency analysis when a portion of the evidence placed before the jury at trial is not before us for review.

In this case, testimony presented by the appellee of a video recording (deposition) of a medical expert and of an individual familiar with Arrendell was not transcribed by the court reporter. To further complicate matters, the video recording was not introduced into evidence as an exhibit, and thus we have no record of the testimony of two witnesses considered by the jury.[1]

The court reporter did not transcribe the videotaped depositions. The depositions were seen and heard by the jury, but

---

1. There are a number of drawbacks that appear when such transcriptions are not made. When only excerpts are played, it is often not clear which portions are actually heard by the jury, and even when identifying information is provided, locating those segments of the recorded depositions is equally problematic and time-consuming. When the entire deposition is played, the length of time required for our review of the evidence is exponentially increased because we must review the testimony in real time rather than by reading a record.

Even this, however, does not address the underlying policy difficulties caused by providing reviewing courts with videotapes of testimony. Because we are a reviewing court, we are not to consider the credibility of the witnesses. When the recording of testimony is before us, one of the traditional reasons for that restriction on the extent of our review loses a good bit of its validity. We now have the ability to see the witness and gauge his or her credibility or believability equally as well as could the jury. Exactly the same material is before us as was before the jury. It thus becomes difficult to justify restricting our review to the "cold record," because that is no longer what it is.

they are not in the record furnished to this Court. The Texas Supreme Court announced the controlling rule in *Englander:*

> When the complaint is that the evidence is factually or legally insufficient to support vital findings of fact, or that the evidence conclusively refutes vital findings, this burden cannot be discharged in the absence of a complete or an agreed statement of facts.

*Englander Co. v. Kennedy,* 428 S.W.2d 806, 807 (Tex.1968).

■ Although there have since been changes in the rules governing the preparation of appellate records, and in the rules controlling our review when a partial record is properly requested, the caselaw involving this type of scenario has not been questioned or altered by the Texas Supreme Court. Logically it follows that, without a complete record, it is impossible to review all the evidence presented to the jury or to apply the appropriate evidentiary sufficiency standards in review of the case.

On the other hand, Keeling argues that her inability to obtain a complete record mandates a reversal and remand, citing *State Farm Fire & Casualty Ins. Co. v. Vandiver,* 941 S.W.2d 343 (Tex.App.-Waco 1997, no writ).

## IV. Supplementation or Correction of the Record

The applicable appellate rule authorizes several methods for supplementing or correcting the record on appeal. Tex.R.App. P. 34.6. The first method is by simple supplementation "[i]f anything relevant is omitted from the reporter's record" as authorized by Rule 34.6(d). That section allows a party, the trial court, or the appellate court to direct the court reporter to file the omitted items. The section appears to govern matters recorded by the court reporter, but simply omitted from the official record as it allows the supplementation by a letter directing the court reporter to include the omission. Nothing in that section appears to deal with inaccuracies in the record or the failure of the court reporter to record the proceedings. It has no application to this case. The second method is if there is an inaccuracy in the court reporter's record. Tex.R.App. P. 34.6(e). The final method governs records that have been lost or destroyed. Tex.R.App. P. 34.6(f). We will discuss the applicability of the last two methods of curing the record on appeal.

### A. Inaccuracies

The Texas Rules of Appellate Procedure provide a method to correct inaccuracies in the record. Tex.R.App. P. 34.6(e). The rule begins by allowing corrections by agreement, and if the parties cannot agree on whether or how to correct the record, the rule describes how to settle the dispute after notice and hearing before the trial court. Finally, such correction may be made at the appellate level by abating to the trial court for resolution. Tex.R.App. P. 34.6(e)(3).

■ Whether a complete omission of a substantial portion of testimony can be handled as an inaccurate record under Tex.R.App. 34.6(e) is a matter subject to debate. It is clear that a record may be corrected for inaccuracies where there is a disagreement about whether the record reflects what actually happened at trial. *Ex parte Woodall,* 154 S.W.3d 698, 703 n. 1 (Tex.App.-El Paso 2004, pet. ref'd) (party stated transcription did not accurately reflect her testimony—but made no attempt to use procedure to correct inaccuracy in reporter's record); *Halsey v. Dallas County, Tex.,* 68 S.W.3d 81, 86 (Tex.App.-Dallas 2001), *rev'd on other grounds,* 87 S.W.3d 552 (Tex.2002) (recognizing that, when parties dispute contents of record, after

notice and hearing, it is court's duty to order court reporter to correct any inaccuracies and certify corrected version). These cases rest on the premise that the purpose of the rule is to correct any inaccuracies in the record before the court.

However, some courts have allowed "correction of inaccuracies" in other situations. There are other cases—in a variety of factual settings—where the court reporter did not transcribe a deposition. The Waco court (changing its position from an earlier case) concluded that a reporter's record could be supplemented to add transcription of oral reading from depositions when a courtroom audio recording existed, but was not used originally by the reporter in creating the record. The Waco court had originally taken the position that only shorthand notes could be transcribed, but then later concluded an electronic recording of the playing of the deposition could also be used. *Vandiver*, 941 S.W.2d at 348–49.

An even closer scenario to our case was addressed in *Rogers v. Cigna Ins. Co.*, 881 S.W.2d 177, 180–81 (Tex.App.-Houston [1st Dist.] 1994, no writ). In that case, there was also no recording, but transcriptions existed that had been produced in discovery, thus the record could be supplemented with them. Rogers sought reversal because the record was lost or destroyed, but also, several months before oral argument, asked the appellate court to allow him to correct the record by adding the transcriptions—so that the record would accurately reflect all that was heard by the jury. The First court concluded that the record was not lost, thus automatic reversal was inappropriate. The appellate court then found it to be an "omission" from the record, and then "corrected" the statement of facts by making the deposition transcriptions a part of the record. It appears that in *Rogers* the entirety of the deposi-

tions were played before the jury, as there was no complaint that incorrect portions might be included in the record through this procedure.

We agree it is equally reasonable to consider a record as inaccurate when a portion is omitted—either because not taken or because taken but not transcribed—and therefore subject to this correction procedure. However, no effort has been made to do so for the extended period of time during which this case has been pending.

■ At oral argument counsel for appellant stated he had copies of the depositions in question, but neither party has moved this Court to allow supplementation or correction of the record. The rule concerning correcting inaccuracies in the reporter's record allows the appellate court to submit the issue to the trial court for resolution "[i]f the dispute arises after the reporter's record has been filed in the appellate court." TEX.R.APP. P. 34.6(e)(3). Here, the parties do not dispute the accuracy of the record now before us, and both agree two videotaped depositions were not recorded by the reporter. Each side appears to be satisfied with the state of the record and relies on its incompletion to support their argument—appellant argues she is entitled to a new trial based on an incomplete record, and appellee argues appellant's points on sufficiency of the evidence must be denied for lack of the record. In such a posture, this Court does not feel it proper to sua sponte abate the matter to the trial court to correct the record.

### B. Lost or Destroyed Record

Keeling argues that the record cannot be obtained and that she is entitled to a new trial. There is no doubt Keeling asked the court reporter to prepare a complete record of the trial. A reporter was

present during the trial, and TEX.R.APP. P. 13.1(a) requires the reporter to "unless excused by agreement of the parties, attend court sessions and make a full record of the proceedings." There is no doubt the reporter did not do so.[2]

Keeling cites cases holding that, if the record is lost or destroyed, the case should be reversed and remanded for a new trial. *Owens–Illinois, Inc. v. Chatham,* 899 S.W.2d 722, 736 (Tex.App.-Houston [14th Dist.] 1995, writ dism'd). In *Owens–Illinois,* an asbestos case involving hundreds of plaintiffs, the summaries of the plaintiffs' medical and biographical evidence presented in lieu of live testimony disappeared. The trial court attempted to replace the record with a juror book, but without agreement of all parties. A new trial was ordered because the rule then in effect, TEX.R.APP. P. 50(e), required a new trial if the record was lost or destroyed without the appellant's fault and the parties could not agree to the contents of the missing record. In *Gillen v. Williams Bros. Construction Co.,* 933 S.W.2d 162, 163–64 (Tex.App.-Houston [14th Dist.] 1996, writ denied), the appellate court found that the record was "lost or destroyed"—i.e., beyond reach or attainment, when the court reporter could not compile a record of the testimony since the reporter had been unable to keep up with the testimony and the tape recorder failed. In *Hernandez v. JLG Industries, Inc.,* 905 S.W.2d 778, 780 (Tex.App.-San Antonio 1995, no writ), the court reporter became debilitated after recording but before transcription, could not prepare the transcription, and therefore it was determined the record was lost, and a new trial was ordered.

The applicable rule concerning a lost or destroyed record is now found in TEX. R.APP. P. 34.6(f). While the rule has been amended since the above cases were issued, it still requires proof that the reporter's record has been lost or destroyed without the appellant's fault. *Id.* The cases cited involve situations where a record was treated as being lost or destroyed. The record was created—but no longer was in existence or transcribable, through no fault of the party. That is not our situation. Here, no record of the testimony of these witnesses was ever recorded by the reporter.[3] Further, we cannot conclude that failure to produce the entire record is totally without appellant's fault or that the proof shows compliance with the diligence requirements in Rule 34.6(f).

■ Keeling's main argument has been that the court reporter shirked his duty by failing to record, and thus reversible error is shown. Even if this case could be found to be governed by the rules concerning a lost or destroyed record, we disagree that a new trial is required. Under that analysis, one of the requirements for mandating a new trial is that the loss or destruction of the court reporter's notes must be without

2. Rule 13.1 provides:
 The official court reporter or court recorder must:
 (a) unless excused by agreement of the parties, attend court sessions and make a full record of the proceedings.
 TEX.R.APP. P. 13.1(a).

3. It is not clear that this "lost or destroyed" provision applies in this case because the record in question was never in existence and therefore was not actually lost or destroyed.

Many courts have held that, in order to obtain a new trial for this reason, an appellant must show the record or exhibits were actually lost or destroyed. *See Adams v. Transp. Ins. Co.,* 845 S.W.2d 323, 324–25 (Tex.App.-Dallas 1992, no writ) (trial court finding that original exhibits were lost through no fault of appellant); *Hidalgo, Chambers & Co. v. Fed. Deposit Ins. Corp.,* 790 S.W.2d 700, 701 (Tex. App.-Waco 1990, writ denied) (parties agreed original exhibit was lost).

appellant's fault. TEX.R.APP. P. 34.6(f)(2). Here, the court reporter was present during the video recording, but wholly failed to record any of the evidence presented in the videotapes. Under recent authority from this Court, we conclude that the failure to object to the .reporter's failure to record the depositions is important. In *Rittenhouse v. Sabine Valley Center Found., Inc.*, 161 S.W.3d 157, 161–62 (Tex. App.-Texarkana 2005, no pet.), we held (based in part on our earlier opinion in *Brossette v. State*, 99 S.W.3d 277, 284–85 (Tex.App.-Texarkana 2003), pet. dism'd, untimely filed), that the court reporter must record all proceedings unless the parties expressly waive their right to have a court reporter record the proceedings—and recognized that, without that express waiver, the court reporter's failure to transcribe the proceedings violates Rule 13.1(a) and constitutes error.

However, we concluded that any error of that nature was not preserved for appellate review because counsel made no objection to the failure to report the proceedings.[4] We recognized that the Texas Court of Criminal Appeals, in analyzing the relevant rules (which apply both to criminal and civil cases), has held that an objection is still required to preserve the failure to record the proceedings for appellate review. *Valle v. State*, 109 S.W.3d 500, 508–09 (Tex.Crim.App.2003).[5]

We emphasize this is not a situation where a party contends that a single line or a short portion of testimony was omitted. To require an objection in that circumstance would place an unfeasible burden on counsel to watch the reporter's every move in detail—simply to be able to timely object. But here two entire depositions were not recorded by the court reporter. One of the depositions was the testimony of an expert concerning the mental capacity of the testator. Typically, this type of deposition requires an explanation of the background and qualifications of the witness in order that the witness may express an opinion, the type of analysis performed, and the opinion of the witness. Many times such witnesses are thoroughly cross-examined. The testimony regarding the mental capacity of the testator was the primary issue in the case. The record shows no objection, no comments made, nothing to indicate that the reporter's inaction was brought to the attention of the court with any attempt to correct the failure at a point at which the trial court could have corrected the omission. Unlike either *Vandiver* or *Rogers*, there has been no attempt made to provide any record that would show either it was or was not apparent that the court reporter was recording the proceedings.

Another method of ensuring a complete record would have been to offer the videotape recording itself into evidence. Finally, as previously stated, no effort has been made to supplement the record from existing copies of the transcribed depositions. Rule 34.6(f)(4) states that, to be entitled to a new trial, the appellant must show that the lost or destroyed record cannot be replaced by agreement of the parties or the lost or destroyed exhibit

---

4. Rule 33 provides
 "(a) *In General.* As a prerequisite to presenting a complaint for appellate review, the record must show that:
 (1) the complaint was made to the trial court by a timely request, objection, or motion...."
 TEX R.APP. P. 33.1(a).

5. *See Brossette*, 99 S.W.3d at 284–85; *Williams v. State*, 937 S.W.2d 479, 487 (Tex. Crim.App.1996) (former Rule 11); *see also Morin–Spatz v. Spatz*, No. 05–00–01580–CV, 2002 WL 576513, at *8 (Tex.App.-Dallas Apr.18, 2002, no pet.) (not designated for publication).

cannot be replaced either by agreement or with a copy determined by the trial court to accurately duplicate with reasonable certainty the original exhibit. Here, there has been no attempt to obtain an agreement as to the record or have the trial court determine if a duplicate of the exhibit (the videotape) could be produced. Consequently, there is no proof that the missing portions of the record could not have been replaced by agreement or that the trial court was unable to accurately duplicate the exhibit. Therefore, even if we should conclude that this record should be treated as lost or destroyed, we cannot say the failure to obtain the omitted portion of the record is without any fault of appellant or that appellant has proved the requirements necessary for a new trial—that a record cannot be replaced by agreement or that an exhibit cannot be replaced either by agreement or by trial court certification. As we have discussed, appellant could have objected to the court reporter's failure to record two complete video recordings of this crucial testimony, moved the court to receive the video recording into evidence, and finally could have requested either the trial court or this Court to allow supplementation or correction of the record by use of the transcribed copies of the depositions or the videotape as an exhibit.

The case on which Keeling relies to support her claim for a new trial demonstrates the very rule we have discussed. *See Vandiver*, 941 S.W.2d at 348. As Keeling does here, State Farm in *Vandiver* asserted that the evidence was insufficient to support the findings of the jury and urged that, since a complete record could not be produced, it was entitled to a new trial. *Id.* at 345. The Waco Court of Appeals agreed with that general statement, citing the *Englander* case. *Id.* at 345 n. 1. The facts in *Vandiver* were that the court reporter was in the courtroom and was mov-

ing his hands in such a manner that everyone involved thought a record was being made when it was not. However, an audiotape recording was made of all the evidence. *Id.* at 349. On motion, the appellate court remanded the matter to the trial court to determine a correct statement of facts. Thereafter, State Farm moved the appellate court to strike the corrected record. The appellate court found the audiotape record to be proper and denied the motion to strike; thus, the motion to reverse and remand was denied. The purpose of the rule is to allow a correct record to be presented to the appellate court if that is possible so that the case may be determined on the merits rather than by presumptions. In *Vandiver*, after remanding the case to the trial court, a proper record was presented. By contrast, here, appellant has not requested a correction of the record. One may not sit idly by knowing that a record is lost, destroyed, or omitted and make no attempt to comply with the rules of procedure allowing correction or supplementation and then rely on that incomplete record to complain that a new trial must be granted.

## V. Conclusion

■ The final result is that we have an incomplete record before us for review. The controlling caselaw clearly states that, when a record is incomplete (and the rules on partial records do not apply—which they do not), we must presume that the missing portion of the record supports the factual determinations made by the factfinder. *Bennett v. Cochran*, 96 S.W.3d 227, 230 (Tex.2002). Thus, all of Arrendell's fact-based contentions of error fail.

## VI. Did the Court Err In the Nature of Relief Granted?

The only remaining issue is Keeling's contention that the trial court exceeded its

authority by setting aside a deed, granting monetary damages against Keeling personally, and placing a constructive trust on the funds in Keeling's possession for which she had been the designated "pay on death" beneficiary. Keeling's argument assumes first that those actions by the trial court were in the nature of ruling on causes of action, and second that the court erred by granting a post-verdict trial amendment to allow those new causes of action to be raised.

 We disagree with the initial assumption. A constructive trust is not a cause of action, only a remedy for breach of fiduciary duty. *Trutec Oil & Gas, Inc. v. W. Atlas Int'l, Inc.*, 194 S.W.3d 580, 586 n. 7 (Tex.App.-Houston [14th Dist.] 2006, no pet.); *see Meadows v. Bierschwale*, 516 S.W.2d 125, 128–29 (Tex.1974); *Grace v. Zimmerman*, 853 S.W.2d 92, 97 (Tex.App.-Houston [14th Dist.] 1993, no writ).[6] In this case, a breach of fiduciary duty was found, involving the taking of money by Keeling. Thus, under these facts, finding monetary damages and then creating a constructive trust over the remaining funds is a reasonable method to attempt to effectuate the verdict. Similarly, in this context, the order setting aside the deeds is not a new cause of action, it is a means of effectuating the judgment entered by the court.

 Even had this had been a cause of action rather than a mode of relief, post-trial amendments to pleadings designed to match the pleadings to the verdict of the jury must be allowed unless the opposing party presents evidence of prejudice or surprise or the amendment asserts a new cause of action or defense and the opposing party objects to the amendment.

*Greenhalgh v. Serv. Lloyds Ins. Co.*, 787 S.W.2d 938, 939–40 (Tex.1990). There is no evidence of prejudice or surprise in the record before us, and the amendments do not assert a new cause of action or defense. The contention of error is overruled.

We affirm the judgment.

## OPINION ON REHEARING

CARTER, Justice.

 In her motion for rehearing, Helen Keeling complains the original opinion did not specifically address her issue that a conflict existed between two of the jury determinations. The jury found that Arrendell lacked testamentary capacity to execute the will and also that she had been unduly influenced regarding the will. Keeling complains these two findings were inconsistent and mutually exclusive.

However, after the jury's verdict, Keeling filed a motion for the trial court to disregard the finding of undue influence and alleged that such finding had had no support in the evidence. The trial court granted that motion and entered such an order. No complaint was made on appeal of that ruling. Keeling argues that, despite the trial court's ruling, the conflict resulted in a "mutual destruction of the findings" of both undue influence and lack of testamentary capacity. Without analyzing Keeling's argument that the jury's findings were inconsistent and even if we assume, for purposes of the argument, they were inconsistent, we disagree with Keeling's analysis.

In granting the motion to disregard the jury's finding on undue influence, the trial court necessarily found that there was "no support in the evidence" for that jury de-

---

**6.** We also note that in her appeal Keeling has not attacked the jury's answer finding that she breached her fiduciary duty to Arrendell.

termination. *See* Tex.R. Civ. P. 301. That order has not been challenged on appeal. The net effect of the trial court's uncontested order is an adjudication that no evidence supported the jury's answer regarding undue influence. The trial court's determination that no evidence supported the finding of undue influence resolved any potential conflict in the jury's findings. Consequently, only the jury's finding of lack of testamentary capacity was relevant on appeal. Keeling challenged the sufficiency of the evidence regarding that jury determination on appeal. In our opinion, we explained that, due to an incomplete record, all evidence sufficiency challenges necessarily failed.

We overrule the motion for rehearing.